## Nay Aug Lumber Company, Appellants, *v.* Scranton Trust Company.

*Trusts and trustees—Trustee of corporate mortgage—Foreclosure sale—Purchase and re-sale of property—Equity.*

1. The trustee of a corporate mortgage is bound, in the exercise of the discretion left to it, to use the same diligence and care in protecting the interests of the bondholders that a prudent man would use in protecting his own interest, and such trustee, in the absence of a specific provision in the mortgage, has implied power to bid in the property at a foreclosure sale for the benefit of the bondholders at a figure sufficient to cover the debt, interest and costs, and not in excess of the value of the property.

2. In such a case the trustee has the further right to make a re-sale of the property so acquired to the best advantage, and an order of court authorizing such sale is unnecessary.

3. In a proceeding in equity to set aside a sheriff's sale and to enjoin a public sale of land so acquired, the bill was dismissed where it appeared that the defendant, trustee under a corporate mortgage, had caused certain property subject to a lien of the

mortgage to be sold and had purchased the same at a figure sufficient to pay debt, interest and costs, to prevent a sale at a sacrifice; and it further appeared that the action was taken in good faith and in the interest of all the bondholders as represented by the trustee and there was no suggestion that the bid of the trustee exceeded the fair value of the property; and there was no evidence tending to show that the re-sale of the property by the defendant would be an inequitable or unjust exercise of its power.

Argued Feb. 25, 1913. Appeal, No. 397, Jan. T., 1912, by plaintiff, from decree of C. P. Lackawanna Co., June Term, 1911, No. 1, in equity, dismissing bill in case of Nay Aug Lumber Company, et al., v. Scranton Trust Company, and Scranton Trust Company, Trustee. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity to set aside sheriff's sale and enjoin re-sale of property. Before NEWCOMB, J.

The opinion of the Supreme Court states the facts.

The court dismissed the plaintiff's bill.

*Error assigned* was the decree of the court.

*M. J. Martin,* with him *Roswell H. Patterson, Ralph W. Rymer* and *H. M. Streeter,* for appellants.—The trustee could do with the property only what the mortgage, either in expressed terms or by necessary implication, authorized it to do. It was not the general but the special agent of the bondholders: Short's Law of Ry. Bonds and Mtgs., Sec. 274; Fidelity Ins. Title & Safe Deposit Co. v. Shenandoah Valley R. Co., 32 W. Va. 244 (9 S. E. Repr. 180) ; Harrisburg & Eastern R. R. Co.'s App., 1 Mona. 692.

A special power must be strictly pursued. If a special agent, exceeding his authority, purchases property at a sale, he must be deemed the purchaser: The Loudon Savings Fund Society v. Hagerstown Saving Bank, 36 Pa. 498; Campbell v. Foster Home Assn., 163 Pa.

609; Dripps's Est., 4 Clark 87; Hopkins v. Everly, 150 Pa. 117.

If the trustee had power under the mortgage to purchase at the foreclosure sale, having purchased the property it took the title in trust for the bondholders. The transaction simply changes the bondholders from the position of creditors of the company to that of actual owners of the property through the perfected title of their trustee. The trustee could not later sell the property to a third party without the consent of the owners, or order of court. To allow a trustee such a measure of discretion as a sale under such circumstances would imply, might, in many cases, make him independent and despotic.: James v. Cowing, 82 N. Y. 449; Short's Law of Ry. Bonds & Mtgs., Sec. 275, 284.

*H. A. Knapp,* of *Warren, Knapp & O'Malley,* and *S. B. Price,* for appellees.—Although no express power of sale be conferred by the instrument creating the trust, such power will be implied wherever duties are imposed upon the trustee which cannot be performed without it, or in other words, wherever it can be gathered from the instrument that the grantor must have intended that he should have such power; and in such case no previous application to the court is necessary: 28 Am. & Eng. Enc. of Law, (2d Ed.) 1002-1003, and 983; Waddington's Est., 7 Pa. D. R. 697; Yerkes v. Richards, 170 Pa. 346.

If, in order to execute the trust for the benefit of the cestui que trusts, the trustee must sell the property, or when the estate must be sold to raise the money to pay debts, and it is vested in trustees by deed, it is within the scope of their fiduciary authority to sell, therefore they have no occasion to obtain license to sell. Their own deed transfers a good title: Goodrich v. Proctor, 67 Mass. 567; Purdie v. Whitney, 37 Mass. 25; Gould v. Lamb, 52 Mass. 84.

OPINION BY MR. JUSTICE POTTER, May 5, 1913:

The first question raised by this appeal is as to the right of a trustee in a mortgage to buy in the property for the benefit of the bondholders. From the facts as found by the court below it appears that on March 1, 1907, the Scranton Driving and Field Association, a corporation, executed and delivered to the Scranton Trust Company, a mortgage upon the real estate of the association in Lackawanna Township, Lackawanna County, comprising some thirty-two acres of land with the improvements thereon. The mortgage was given to secure an isssue of $25,000 of bonds. It was recorded on March 2, 1907, and on the same day three judgments were entered against the association by the Scranton Trust Company, trustee, on three judgment notes for $2,202.13 each. The beneficial owners of the judgments were the Nay Aug Lumber Company, one of the plaintiffs, and eight other creditors of the association, all of whom were also bondholders. It was agreed that the lien of the judgments should be subsequent to that of the mortgage, but it was provided in the mortgage that any money deposited with the trust company should first be applied in payment of the judgments. The trust company accepted the trust upon the express stipulation that it should be liable only "for such moneys and securities as shall come into its hands for the purpose of distribution hereunder and for its own wilful default or negligence." In April 1908, execution was issued on the first of the judgments, and the real estate was sold at sheriff's sale, and it was purchased for the beneficial owners of the judgments by the trust company, subject to the lien of the mortgage. Default having been made in the payment of interest upon the bonds, foreclosure proceedings were begun under the mortgage, and the property was sold by the sheriff on June 17, 1910. Up to this time the relations between the bondholders had been apparently harmonious, but the court below finds as a fact that at this sale there appeared two discordant

factions of the bondholders. One group, though not prepared to buy, insisted that the property was worth at least the amount of the judgment. The plaintiffs declined to treat with the other faction, or to advise with counsel for the trustee. As the court says: "In this dilemma, which there had been no reason to anticipate, the trustee by its counsel was compelled to act on its own judgment in the effort to serve the common interests which it represented. To prevent a sale at a sacrifice, it became a rival bidder against counsel for plaintiffs. The latter bid the property to $25,500, and it was knocked down to the trust company as trustee, at its next bid, for $26,000." The court further finds that this action was taken in good faith, and in the interest of all the bondholders as represented by the trustee. Evidently the intention was to bid enough to cover the debt, interest and costs, and there was no suggestion that the bid of the trustee exceeded the fair value of the property. The sale was confirmed by the court below, and the trustee was permitted to receipt for the bid, by applying the amount, less costs, &c., on the mortgage. It is difficult to see any good reason why a trustee should not be permitted to bid at a foreclosure sale, if it be necessary to protect the interests of the bondholders. But little authority upon the question can be found, probably for the reason that corporation mortgages usually provide specifically for the purchase at foreclosure sales, of mortgaged premises by the trustee, in the interest of the bondholders, and for the purpose of reorganization. Where such power is not explicitly given, it may very well be implied. This doctrine is recognized by the text book writers. In 3 Thompson on Corporations (2d Ed.) par. 2678, it is said: "It seems clear that the trustee has implied power to purchase for the benefit of bondholders. At least he has such implied power to bid in their behalf to an amount equal to the principal and interest due on the mortgage......It has been said that the duty of the trustee does not end with the institution and prose-

cution of the foreclosure suit; but his duty requires him to attend the sale and protect the rights of the bondholders, and if necessary bid in the property; and this right, it seems, exists independently of the terms of the mortgage. Thus, where the court directed the trustee to bid to a certain amount, for the benefit of all bondholders, this was held not to prevent him from bidding a larger amount, although not requested to do so by a majority of the bondholders. The court's order was construed as fixing only a minimum bid, or rather as naming a minimum sum, below which he should not permit the property to be sacrificed: James v. Cowing, 82 N. Y. 449."

In 3 Cook on Corporations (6th Ed.) par. 885, it is said: "It seems that a trustee has implied power at the foreclosure sale to bid for the property, in behalf of the bondholders, up to a figure equal to the principal and interest due upon the mortgage debt." In Jones on Corporate Bonds and Mortgages (1907) par. 289, it is said: "It is the duty of a mortgage trustee to protect the security he has taken for the bondholders to the utmost of his ability." And par. 290: "It is the duty of trustees intrusted with the sale of lands for the benefit of the bondholders to make the sales as available as possible for the extinction of the debt for the security of which they hold the land." In Com. v. Susq. & Del. R. R. Co., 122 Pa. 306, Mr. Justice WILLIAMS said (p. 319): "When a default occurs, the duties of the trustee (in a corporation mortgage) become active and important. He represents all the bondholders, and is under obligation to protect them so far as the property in his hands in trust for them will enable him to do so." The trustee was bound, in the exercise of the discretion left to it, to use the same diligence and care in protecting the interests of the bondholders, that a prudent man would use in protecting his own interests. Certainly any prudent man would bid up to the amount of the debt and interest at a foreclosure sale under his control, provided the

property was worth that much or more. Under the circumstances shown, the court below would have authorized the trustee to bid, had an application been made to it, before the sale, and "The rule has been adopted in equity that a trustee has the power to do that without a special order, which the court under proper proceedings would order": 28 Am. & Eng. Ency. L. 982.

Having purchased the property in the proper exercise of discretion, there can be no doubt of the right of the trustee to make sale of it, to the best advantage. This principle is stated in Yerkes v. Richards, 170 Pa. 346, cited by the court below. Mr. Chief Justice STERRETT there said (p. 352): "When the mortgaged premises were put to sale on foreclosure proceedings, he (the trustee) found it necessary, for the protection of the trust fund, to bid in the property, and he accordingly did so. He thus became clothed with the legal title to the land which for the time being represented part of the corpus of the trust. For the purpose of reinvesting as contemplated by the testator, it was necessary for him to sell, and accordingly he executed the option contract in suit. There cannot be any question, either as to his authority or his duty to do this. It was unnecessary for him to ask the court for authority to sell." The power of an executor or trustee to sell property purchased by him in his representative capacity at sheriff's sale was recognized in Barber's Appeal, 125 Pa. 564, and Gumaer v. Barber, 182 Pa. 31. In the latter case Mr. Justice DEAN said (p. 36): "If the executor bought the land at the sheriff's sale in his representative capacity for the estate, the land still continued personalty for purposes of distribution under the will, and the purchaser took a good title at the executor's sale. In other words, if he bought for himself as executor he was a trustee under the will, and he had the right to dispose of the farm."

These authorities on principle clearly sustain the right of the trustee to sell in this case, and the evidence does not show that the power was to be inequitably or un-

justly exercised, and therefore no reason appeared for interference by injunction. Counsel for appellants also take the ground that the trustee did not purchase for the bondholders, but for itself, in its own right, and they urge that the trustee should therefore be charged with the amount of the bid, at which it purchased the property at the sheriff's sale. This position is entirely opposed to the facts as found by the court below. Even had the trustee attempted to buy for itself, it would not have been permitted to hold title to the property, to the disadvantage in any way of the bondholders. As was said by Chief Justice Mitchell in Church v. Winton, 196 Pa. 107: "If a trustee buys the trust property even at a public sale, which is brought about, or in any way controlled by himself, he will be presumed to buy and hold for the benefit of the trust." This contention of counsel for appellants is inconsistent with the attempt to enjoin the sale. Unless the trustee holds title for the bondholders, they have no standing to object to any action taken with respect to the sale.

The assignments of error are all overruled, and the decree of the court below is affirmed.