## WERNER, HARRIS & BUCK v. EQUITABLE TRUST CO. et al.

Circuit Court of Appeals, Tenth Circuit. October 10, 1929.

Rehearing Denied November 18, 1929.

No. 50.

See, also, 33 F.(2d) 1023. Reversing Equitable Trust Co. v. U. S. Oil & Refining Co., 35 F.(2d) 508.

Glenn L. Buck, of Rochester, N. Y. (Werner, Harris & Buck, of Rochester, N. Y., on the brief), for appellants.

Charles Battelle and C. E. Herring, both of Omaha, Neb. (E. E. Wakeman, of Newcastle, Wyo., on the brief), for appellees.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge. This appeal is from an order confirming a sale of mortgaged property. The Equitable Trust Company, one of the appellees, is the trustee of the mortgage deed of trust. The appellant is a committee of the bondholders, representing $90,000 of the issue. Albert E. May and Harry A. May were brought into the case as appellees by an alias citation. Albert E. May is the owner of $33,500 of the bonds, and Harry A. May was the only cash bidder at the sale. The two Mays are the holders of the stock of the Egaso Holding Corporation, which is the owner of the fee title to the properties foreclosed; $26,500 of the bonds are held by scattered individuals, who do not appear in the action, but whose interests are entitled to protection. An earlier sale of the property had been set aside, and the property again sold, and it is from the order confirming the latter sale, that this appeal is taken.

The trust deed contained no provision authorizing the trustee to bid at the sale for and on behalf of the bondholders. It did contain a general provision permitting the trustee, if a default has continued for six months, and requiring it, if one-tenth in interest of the bonds so request, "to proceed

forthwith to enforce the rights of the said trustee and of the bondholders hereunder by sale or entry, or both, according to such requisition, or by judicial proceedings for such purpose, as he, being advised by counsel learned in the law, shall deem most expedient in the interest of the holders of the bonds secured hereby." The statutes of Wyoming provide for a six-months period of redemption, during which period the owner remains in possession.

After default and decree of foreclosure and sale, a public sale was advertised for February 25, 1928. On February 17, 1928, the appellant appeared before the court, ex parte, and asked for an order permitting the trustee to bid at the sale for and on behalf of all of the bondholders. This application was granted, and an order made permitting the trustee to bid for and on behalf of all of the bondholders, by the payment of $5,000 at the time of the making of the bid, and a guaranty of an additional $15,000 for the payment of taxes, costs, and expenses, the balance of the bid to be discharged by a credit on the mortgage indebtedness. The court reserved jurisdiction to determine on confirmation any question that might arise concerning such order. The effect of this was to allow the trustee to discharge its bid by the surrender of bonds which were not controlled by the appellant, as well as by the surrender of bonds which were so controlled; and this over the objection of the appellee Albert E. May, the owner of a substantial amount of the bonds so proposed to be used.

When the sale was held, Harry A. May bid $30,050 in cash for the principal parcel offered for sale, and the next bid was the paper bid of the trustee of $75,000. The trustee moved to confirm the sale to it, offering only to pay the taxes, costs, and expenses in cash, the balance to be paid by a credit on the indebtedness. Albert E. May and Harry A. May objected to confirmation on such basis, and moved to confirm the sale upon the cash bid of Harry A. May.

These motions were argued and briefed. Upon due consideration of the matter, the trial court correctly came to the conclusion that there was no power in the court to compel the holder of a single bond to participate in a bid for the property, if he did not wish to do so; that the rights of bondholders were measured by their bonds and the trust deed securing the same, and, absent any provision therein authorizing the trustee to bid for and on behalf of the bondholders, there was no power in the courts to confer such authority upon the trustee. We think there can be no doubt as to the correctness of this conclusion. Each bondholder has the absolute right to determine for himself, in case of default, whether he shall take his loss and quit, or continue to gamble; if the property is sold at public sale, he has a right to take his proportion of the best bid that can be secured in cash, and cannot be compelled to become an owner of an undivided interest in the property. In this connection the trial court aptly said:

"By this outline of the facts the question is fairly raised as to whether or not the court may authorize, lacking a provision in the trust deed, a trustee to become a bidder for all the bondholders at a sale of the property and to offer as a portion of said bid in consideration of the sale price the debt secured by the trust deed in lieu of cash. Briefs have been presented and it seems that the research of counsel furnishes an economy of decisions upon the point involved. A decision of one state court, Nay Aug Lumber Co. v. Scranton Trust Co., 240 Pa. 500, 87 A. 843, Ann. Cas. 1915A, 235, seems to sustain the conclusion contended for by the bondholders' committee, to the effect that a trustee under the circumstances may be authorized to bid at such a sale, using the debt represented by the bonds in payment of the price bid, in which transaction the trustee then becomes the purchaser of the property, still holding it, however, for future disposition as such representative of all the bondholders. In subsequent litigation, however, it appears that this plan worked out rather disastrously, as upon a subsequent sale of the property a loss was experienced, inasmuch as the property did not bring within a third of the amount of a cash bid received upon the first sale.

"I am unable to bring myself in accord with the reasoning of the court in the case cited. As it appears to me, the purchaser and holder of bonds had the right and reason to expect that, if there were a default in the payment of bonds under the trust deed, in case of foreclosure the property covered would be sold, and that he would receive his proportionate amount which the property realized in cash, and, moreover, I believe that this should be his right. If the proposed plan is adopted, he becomes unwillingly bound to cast his fortunes with the majority of the bondholders and to be subjected to the subsequent hazards of a greater loss than he would sustain by a sale in regular course for cash. In addition to this, we are confronted with the cumbersome and annoying circumstance of the court still necessarily retaining

jurisdiction of the case for the purpose of authorizing and supervising future sales of the property by the trustee. A decision of the Supreme Court in the case of Sage v. Central Railroad Co., 99 U. S. 334 [25 L. Ed. 394], is one in which that high court sustains the legality of a trust deed which had a provision authorizing the purchase of the property by the trustee upon foreclosure for the benefit of bondholders, including the sale of the property by the trustee subsequently to a newly organized company by a majority of the bondholders. The language of this opinion it would seem rather justifies the conclusion that, if its legality is questionable where specifically authorized by the trust deed, it certainly ought not to be read into the instrument as a power incident to the trusteeship, or one that the court could confer upon the trustee.".

The trial court then made the order appealed from, which provided in substance that the paper bid of the trustee be confirmed, if the appellant within 30 days deposit in court, for the use of the bondholders not represented by it, their proportion of the bid in cash. It further provided that the unrepresented bondholders should have 6 months within which to claim their share of the bid in cash, failing which their bonds were to be applied on the purchase price of the property. If the appellant failed within 30 days to make good such proportion in cash, then the cash bid of Harry A. May should be accepted and the sale confirmed in him.

██ It is customary and proper, in a decree of foreclosure, to authorize any bondholder or group of bondholders to bid at the sale and apply such bonds as they may own on the purchase price, paying in cash to other bondholders their proportionate amount of the net proceeds of the sale. The difficulty with the matter here is that such an order was not made prior to the sale; entering such an order after the sale is too late. At the time the sale was held, an order was outstanding authorizing the trustee to bid and discharge the bid by a credit on the indebtedness, without reference to the ownership of the bonds. On the large parcel, the first bid made was a cash bid of $30,050, and the next was a paper bid of $75,000. It is impossible to say what would have been the result of the sale if this paper bid had not intervened. Outsiders may have been willing to bid $40,000, or $50,000, or $60,000 cash for the property, but were discouraged, if not foreclosed, from making it because of the intervention of the $75,000 paper bid. If it had not been for the order authorizing the paper bid, the appellant may have raised the bid of May, paying the other bondholders their proportion of the bid in cash. Harry A. May might have increased his bid several times against cash bids, where there was no reason for increasing it against a paper bid. The existence of the order permitting the paper bid at least chilled the bidding at the sale, if it did not result in there being in fact no public sale. As between the immediate parties to the suit, it may be that the appellant is not in position to complain of this situation, since it was brought about by its own action, and the appellees are not here complaining as to the order of confirmation. But there are some $26,500 of bonds, the owners of which are entitled to protection of the court, and who are not represented. Their rights have been prejudiced by the order, which resulted in the absence of any competition among the cash bidders at the sale.

It is our conclusion, therefore, that a new sale should be held; that the order of February 17th, permitting the trustee to bid for and on behalf of all of the bondholders, should be set aside; that the order of sale should contain the usual provision that the appellant, the appellees, or any other bondholder or group of bondholders may bid at the sale; that each bidder shall make such cash deposit as the court may think appropriate for taxes, costs, and expenses of the sale, and shall pay in addition in cash a sufficient amount to pay other bondholders their proportionate amount of the net proceeds of the sale. Nothing herein shall be construed as in any manner limiting the power of the trial court in other respects; that is, if the trial court believes that an upset price should be fixed, or other provision made for the protection of the bondholders, his judgment in such respects is not fettered by this opinion.

The orders appealed from are reversed, with directions to proceed in consonance with this opinion. Because delay is necessarily detrimental, the mandate will issue forthwith.