No. 31,256.

The First National Bank in Wichita, as Trustee, etc., *Appellee*, v. Claude E. Neil et al.; Josephine M. Kohr, *Appellant*.

(20 P. 2d 528.)

Opinion filed April 8, 1933.

*Paul J. Wall, Carl I. Winsor* and *John E. Boyer,* all of Wichita, for the appellant.

*B. F. Alford,* of Wichita, for the appellee.

The opinion of the court was delivered by

Thiele, J.: This is an appeal from an order authorizing a trustee under a trust deed, or in legal effect a mortgage, to bid at foreclosure sale.

Claude E. Neil and wife executed and delivered to the First National Bank in Wichita an instrument denominated "deed of trust" whereby they conveyed real estate in trust for the purpose of securing payment of "first deed of trust bonds," the form of which is set out in the instrument. Default was made, and under the provisions of the deed of trust the trustee filed his petition for foreclosure, and thereafter a judgment was rendered finding the amount due, declaring it to be a first lien and ordering the property sold. An order of sale was issued, but when the property was offered for sale by the sheriff there were no bidders. Thereafter the trustee filed its motion for instructions and authority to bid. Upon this motion being filed the defendant, Josephine M. Kohr, filed her motion objecting to the court's authorizing the trustee to bid. After hearing, the court made its order authorizing the trustee to bid an

amount not exceeding its judgment and the interest thereon, plus costs and unpaid taxes. The objecting defendant, appellant here, filed a motion for a new trial and she appeals, the question on appeal being whether the court erred in authorizing the trustee to bid in the property for the benefit of bondholders owning the bonds merged in the judgment.

The deed of trust, in so far as is necessary here, may be summarized as follows: The grantors "in consideration of one dollar to them in hand paid . . . and *to secure the equal and ratable payment* of the principal and interest of" 138 bonds of $100 and $500 denominations, convey to the trustee certain real estate and improvements "but in trust, nevertheless, upon, under and subject to the conditions, covenants, agreements and provisions hereinafter set forth, *and for the equal and ratable benefit and security of the holders of said bonds and interest, without preference, limitations or distinction as to lien or otherwise* of any one of said bonds over any other by reason of priority in date of issue or maturity or any other cause." The bonds are described as to tenor and the form is included, the form containing an appropriate statement that the notes are issued in pursuance, etc., of the deed of trust.

The sixth paragraph of the deed of trust recites:

"Sixth: All of the bonds issued hereunder *shall be equally and ratably secured* under this deed of trust without preference, priority or distinction of one bond over another as to lien, payment or otherwise on account of the time or times of the actual issuance and delivery or maturity of the said bonds or any of them."

The twelfth paragraph provides that, if default is made, the trustee shall have power to declare all of the bonds due and bring foreclosure proceedings and "may proceed to protect and enforce the rights of the trustee and of the bondholders hereunder by suit or suits for the enforcement of any remedy which the trustee, being advised by counsel, shall deem effectual or desirable to protect and enforce the rights aforesaid."

"Thirteenth: All of the remedies, provided herein to be enjoyed and exercised by the trustee in case of default hereunder, shall be cumulative and in addition to all of the rights and remedies provided by law.

"Fourteenth: The trustee may proceed at any time upon default as herein provided in any manner authorized hereby without the authority or direction of the bondholder but shall so proceed upon the request in writing of the owners of a majority in amount of the bonds then outstanding hereunder.

"Sixteenth: The purchase money, proceeds and avails of any sale hereunder, together with any other money which may be held by the trustee hereunder, shall be applied to the payment of—

"(a) Costs and expenses.

"(b) Advancements.

"(c) Past due interest.

"(d) The principal of said bonds with interest: *Provided, however,* That if the proceeds of any such sale shall not be sufficient to pay in full the principal of said bonds, then without preference or priority such proceeds shall be *applied ratably* to the payment of all of the bonds secured hereby."

"Seventeenth: In case of sale hereunder, any purchaser shall be entitled to apply any bond issued hereunder and any unpaid coupons affixed thereto upon such purchase price by presenting same for credit thereon of the appropriate amount of such purchase price applicable to the payment of said bond or bonds out of the net proceeds of such sale."

The twentieth section provides that no holder of a bond shall institute any proceedings to foreclose, etc., unless the trustee shall refuse, the conditions being set out in detail, the section concluding:

"It being the intention hereof that no holder or holders of bonds or coupons issued or secured hereby shall have any right in any manner whatever by his or their action to affect, disturb, or prejudice the lien of this indenture, or to enforce any rights hereunder except in the manner herein provided, and that all proceedings hereunder or at law or in equity shall be instituted, had and maintained in the manner herein provided for the *equal benefit of all of the holders* of the outstanding bonds and coupons secured hereby."

The trustee's motion for instructions and authority to bid, among other matters, recited the twelfth paragraph of the deed of trust, informed the court there was no specific authority to the trustee to bid; that in the judgment of the trustee an *alias* order of sale should issue; "That plaintiff believes it should be permitted to bid the said property in at such sheriff's sale in the event there are no other satisfactory bidders therefor, at an amount not greater than the amount of said judgment, costs and interest, and the unpaid taxes on said property, for the benefit of the holders of said bonds for which judgment was rendered in this action"; that owing to the eighteen-months period of redemption allowed by statute there are rarely any competitive bidders at foreclosure sales, and it is usually necessary that the judgment creditor bid in the property; that in the trustee's judgment when the property is again offered for sale there will be no bidders unless the trustee is authorized as trustee to bid the property in for the benefit of the holders of the bonds; that the trustee is uncertain as to whether or not it has authority to bid said

property in for the benefit of the holders of said bonds, either as implied by the terms of said deed of trust or under authority implied by law, and prayed the court to inform and instruct it as to its rights and duties under said trust deed and under the law, that it be instructed to have an *alias* order of sale issue, and that it be authorized and permitted within its discretion to bid the property in for the benefit of bondholders at a sum not greater than the amount of the judgment and interest, costs and unpaid taxes.

The motion of defendant Kohr, among other recitals, states:

"This applicant further informs the court that she is opposed to the granting of said motion for the reason that plaintiff, as trustee, is not authorized to bid the said property in at such sheriff's sale for the benefit of the bondholders by the terms of said deed of trust, nor by authority of law; that if said plaintiff bids said property in for the benefit of the bondholders that the said property will have to be partitioned among the bondholders or again be resold by plaintiff, and that the interest of this bondholder will be endangered by authorizing such purchase and resale of said property; that this applicant does not desire to participate as a beneficiary in the purchase of said property, but desires to have said property sold and to receive her proportionate amount from the proceeds of such sale in satisfaction of her bond, and in order that this applicant may appear in this action and be heard as to her interests, she desires to be made a party defendant herein for herself and in behalf of any other bondholders similarly situated holding bonds secured by said deed of trust and supplemental deed of trust who may desire to take advantage of such defense."

The two motions were heard and evidence was offered, and the court found that the mortgaged real estate had been regularly offered for sale but there were no bidders; that "during the last two years there have been approximately 890 foreclosure sales had in Sedgwick county, Kansas, and in approximately ninety-six per cent of said foreclosure sales no competitive bidders were present and no competitive bids were offered, and the property was bid in by the judgment creditor, and that seldom is there a competitive bid at a foreclosure sale in Kansas, except occasionally by junior lienholders, and the court finds that for the protection of the bondholders holding bonds merged in the judgment in this action, that the trustee should be authorized to bid the said property in at such subsequent foreclosure sale at a sum not greater than the amount of the judgment, costs and past due taxes against said property"; that defendant Kohr is one of the holders of the bonds merged in judgment and objects to the trustee being authorized to bid the property in for the benefit of the bondholders; that "said deed of trust and supple-

ment thereto do not specifically authorize the trustee to bid the property in at foreclosure sale, but . . . it is necessary for the interest of all of the bondholders that the trustee be authorized to bid at such sale, and that the said deed of trust, having been made with reference to the laws of the state of Kansas, that the trustee has the power implied by law to bid the property in at such foreclosure sale for the benefit of all of the bondholders," and it ordered the plaintiff as trustee to cause an *alias* order of sale to issue, and "that the trustee should be, and it is hereby authorized to bid the said property in at such sheriff's sale, if in its judgment it deems best under the circumstances then existing, at an amount not greater than" the judgment and interest, costs and unpaid taxes "for the benefit of the bondholders owning the bonds merged in the judgment rendered in this action."

The question presented is new in Kansas, and has not received much attention in other jurisdictions. Two distinct lines of authority are to be found, and both have been well presented in the briefs.

In *Nay Aug L. Co. v. Scranton Tr. Co.*, 240 Pa. St. 500, 87 A. 843, Ann. Cas. 1915A 235, decided in 1913, a mortgage was given to secure payment of bonds. The mortgage was foreclosed and the property was bid in by the trustee. Its right to do so was questioned, and the court in treating the matter says:

"It is difficult to see any good reason why a trustee should not be permitted to bid at a foreclosure sale, if it be necessary to protect the interests of the bondholders. But little authority upon the question can be found, probably for the reason that corporation mortgages usually provide specifically for the purchase, at foreclosure sales, of mortgaged premises by the trustee, in the interest of the bondholders, and for the purpose of reorganization. Where such power is not explicitly given, it may very well be implied. This doctrine is recognized by the textbook writers. In 3 Thompson on Corporations, 2d ed., paragraph 2678, it is said: 'It seems clear that the trustee has implied power to purchase for the benefit of the bondholders. At least he has such implied power to bid in their behalf to an amount equal to the principal and interest due on the mortgage . . . It has been said that the duty of the trustee does not end with the institution and prosecution of the foreclosure suit; but his duty requires him to attend the sale and protect the rights of the bondholders, and if necessary bid in the property; and this right, it seems, exists independently of the terms of the mortgage. Thus, where the court directed the trustee to bid to a certain amount, for the benefit of all bondholders, this was held not to prevent him from bidding a larger amount, although not requested to do so by a majority of the bondholders. The court's order was construed as fixing only a minimum bid, or rather as naming a minimum sum

below which he should not permit the property to be sacrificed. (*James v. Cowing*, 82 N. Y. 449.)'

"In 3 Cook on Corporations, 6th ed., paragraph 885, it is said: 'It seems that a trustee has implied power at the foreclosure sale to bid for the property in behalf of the bondholders, up to a figure equal to the principal and interest due upon the mortgage debt.' In Jones on Corporate Bonds and Mortgages (1907), paragraph 289, it is said: 'It is the duty of a mortgage trustee to protect the security he has taken for the bondholders to the utmost of his ability.' And paragraph 290: 'It is the duty of trustees intrusted with the sale of lands for the benefit of the bondholders to make the sales as available as possible for the extinction of the debt for the security of which they hold the land.' In *Com. v. Susq. & Del. R. R. Co.*, 122 Pa. 306, Mr. Justice Williams said (p. 319): 'When a default occurs, the duties of the trustee (in a corporation mortgage) become active and important. He represents all the bondholders and is under obligation to protect them so far as the property in his hands in trust for them will enable him to do so.' The trustee was bound, in the exercise of the discretion left to it, to use the same diligence and care in protecting the interests of the bondholders that a prudent man would use in protecting his own interests. Certainly any prudent man would bid up to the amount of the debt and interest at a foreclosure sale under his control, provided the property was worth that much or more. Under the circumstances shown, the court below would have authorized the trustee to bid, had an application been made to it, before the sale, and 'The rule has been adopted in equity that a trustee has the power to do that, without a special order, which the court under proper proceedings would order.' (28 A. & E. Encyc. of L.)" (p. 504.)

The question was again presented in *Equitable Trust Co. v. United States Oil & Refining Co.*, 35 F. 2d 508, decided in 1928. The plaintiff, as trustee under a trust deed, brought suit to foreclose, and a decree was rendered and a sale was had, which was set aside because of erroneous description of the property. A bondholders' committee appeared with plaintiff and joined· in a request to the court for an order permitting the plaintiff, as trustee for all of the bondholders, to bid at a new sale. The order was *ex parte* so far as the minority bondholders were concerned. The trust deed lacked any provision by which, under its terms, the trustee was authorized to become a bidder on behalf of the bondholders. The court in disposing of the matter said in part:

"By this outline of the facts the question is fairly raised as to whether or not the court may authorize, lacking a provision in the trust deed, a trustee to become a bidder for all the bondholders at a sale of the property and to offer, as a portion of said bid in consideration of the sale price, the debt secured by the trust deed in lieu of cash. Briefs have been presented, and it seems that the research of counsel furnishes an economy of decisions upon the point involved. A decision of one state court, *Nay Aug Lumber Co. v. Scranton Trust*

Co., 240 Pa. 500, 87 A. 843, Ann. Cas. 1915A, 235, seems to sustain the conclusion contended for by the bondholders' committee, to the effect that a trustee, under the circumstances, may be authorized to bid at such a sale, using the debt represented by the bonds in payment of the price bid, in which transaction the trustee then becomes the purchaser of the property, still holding it, however, for future disposition as such representative of all the bondholders. In subsequent litigation, however, it appears that this plan worked out rather disastrously, as upon a subsequent sale of the property a loss was experienced inasmuch as the property did not bring within a third of the amount of a cash bid received upon the first sale. I am unable to bring myself into accord with the reasoning of the court in the case cited. As it appears to me, the purchaser and holder of bonds had the right and reason to expect that, if there were a default in the payment of bonds under the trust deed, in case of foreclosure the property covered would be sold, and that he would receive his proportionate amount which the property realized in cash, and, moreover, I believe that this should be his right. If the proposed plan is adopted, he becomes unwillingly bound to cast his fortunes with the majority of the bondholders and to be subjected to the subsequent hazards of a greater loss than he would sustain by a sale in regular course for cash." (p. 509.)

An appeal was taken to the circuit court of appeals, and in its decision (*Werner, Harris & Buck v. Equitable Trust Co.*, 35 F. 2d 513) the court, speaking through McDermott, C. J., said:

"These motions were argued and briefed. Upon due consideration of the matter, the trial court correctly came to the conclusion that there was no power in the court to compel the holder of a single bond to participate in a bid for the property, if he did not wish to do so; that the rights of bondholders were measured by their bonds and the trust deed securing the same, and, absent any provision therein authorizing the trustee to bid for and on behalf of the bondholders, there was no power in the courts to confer such authority upon the trustee. We think there can be no doubt as to the correctness of this conclusion. Each bondholder has the absolute right to determine for himself, in case of default, whether he shall take his loss and quit, or continue to gamble; if the property is sold at public sale, he has a right to take his proportion of the best bid that can be secured in cash, and cannot be compelled to become an owner of an undivided interest in the property." (p. 514.)

In 1929 the question came up in *Silver v. Wickfield Farms*, 209 Ia. 856, 227 N. W. 97. Wickfield Farms executed a trust deed to Artz, trustee, to secure bonds, some of which were delivered to Baker Ice Machine Company as collateral security. The mortgage or trust deed was foreclosed, as was a chattel mortgage. In discussing the power of the trustee the court said:

"The trustee had the right, and in this instance that right was granted to the trustee by the decree, 'to bid upon said property such an amount as he may deem just and fair to properly protect the interests of the bondholders.' In this connection it may be said that where such power is not expressly given,

it may very well be implied. It is the duty of the trustee to bid in the property at foreclosure sale, if necessary to protect the interests of the bondholders. 3 Fletcher's Cyclopedia of Corporations, section 1437; *Nay Aug Lbr. Co. v. Scranton Tr. Co.*, 240 Pa. St. 500 (87 Atl. 843)." (p. 859.)

The question was presented in *Trust Co. v. Stormfeltz-Loveley Co.*, 257 Mich. 655, 242 N. W. 227, decided in 1932, which involved, in addition to the present question, the effect of a statute for the administration of mortgage trusts where the consummation of the objects and purposes thereof in manner and form as intended by the mortgage indenture shall be found not capable of accomplishment, and the effect under that statute of failure to give notice to minority bondholders. In so far as the present question is concerned, the court said:

"We believe that the correct and reasonable rule in mortgage foreclosures is stated in *Werner, Harris & Buck v. Equitable Trust Co.*, (C. C. A.) 35 F. 2d 513, 514; in the absence of any provision therein in the trust agreement 'authorizing the trustee to bid for and on behalf of the bondholders, there was no power in the courts to confer such authority upon the trustee. . . . Each bondholder has the absolute right to determine for himself, in case of default, whether he shall take his loss and quit, or continue to gamble; if the property is sold at public sale, he has a right to take his proportion of the best bid that can be secured in cash, and cannot be compelled to become an owner of an undivided interest in the property.' To like effect are *James v. Cowing*, 82 N. Y. 449; *Hollister v. Stewart*, 111 N. Y. 644, 19 N. E. 782; *Beckman v. Emery-Thompson Mach. & Supply Co.*, 9 Ohio App. 275.

"We are not in accord with the decision in *Nay Aug Lumber Co. v. Scranton Trust Co.*, 240 Pac. 500, 87 A. 843, [Ann. Cas. 1915A, 235] which fully supports plaintiff's contentions. In *Werner, Harris & Buck v. Equitable Trust Co.*, supra, the reasoning of *Nay Aug Lumber Co. v. Scranton Trust Co.*, supra, is held untenable. . . .

"The bondholders are entitled to receive what their contract provided for, and cannot be compelled to take in lieu thereof a beneficial interest in a trust uncertain as to time and outcome, and not contemplated by the indenture." (pp. 665, 666.)

In 42 C. J. 206 it is stated:

"The trustee in a deed of trust in the nature of a mortgage may purchase at the foreclosure sale when this is done in the discharge of his duties as trustee; and where authority to purchase is not explicity conferred in the instrument it may very well be implied."

And *Nay Aug L. Co. v. Scranton Tr. Co.*, supra, is cited in support.

Other citations might be given in which the matter of who might purchase at foreclosure sale is discussed, but some of them depend upon construction of a granted power, and others upon the right of

a trustee to purchase from himself under circumstances materially different from those in this case.

Notwithstanding the designation of the instrument as a deed of trust, it is a mortgage in which the designated trustee acts for all persons interested. By its terms the rights and duties of the trustee are to be determined.

In *Jamison, Trustee, v. Bancroft,* 20 Kan. 169, 183, appears the following:

"The trust, although conditional, is an express one, as the property, persons, and the purposes of the trust are specifically pointed out. In dealing with trusts of this character, courts will not allow the trust to fail or to be defeated by the refusal or neglect of the trustee to execute the same; nor for any act or omission of the trustee; nor even for want of a trustee. If the trustee dies, or refuses to accept the trust, or is incapable of performing it, a court of equity will give to the *cestui que trust* the proper relief, either by executing it or appointing a trustee for that purpose. Trust deeds for the payment of debts have always been favorably regarded in equity, and they will be supported, if possible, notwithstanding any informality which might have invalidated them at law. As far as possible the intention of the parties is to be pursued, and the general object and purpose of the trust will be carried out."

In *Trees v. Johnson, Receiver, etc.,* 130 Kan. 681, 684, 288 Pac. 587, this court said:

"The bank had authority to take mortgages on real estate (R. S. 9-101) and to deal in notes. The indebtedness was substantial in amount. The bank took a series of notes secured by the one mortgage. It sold these notes to various purchasers, retaining the mortgage as security for all of them, and thus became a trustee for the holders of the notes. As such trustee it was bound to the utmost good faith (*Morrow v. Comm'rs of Saline Co.,* 21 Kan. 484) to keep the mortgaged security intact, and is liable in damages for its failure to do so. (7 C. J. 597; *Bank v. Bank,* 106 Kan. 303, 187 Pac. 697; *Stone v. Bank,* 107 Kan. 332, 190 Pac. 1094; *Fulton v. Farmers Nat'l Bank,* 122 Kan. 400, 252 Pac. 242, 123 Kan. 1, 253 Pac. 561; *Bock v. First Nat'l Bank,* 123 Kan. 304, 255 Pac. 68.)"

While the deed of trust herein is in legal effect a mortgage, that does not mean that the trustee thereunder was a mortgagee and nothing more. As such trustee it was its duty to see that, so far as possible, the terms, conditions and limitations of the trust were carried out and performed. It is clear from repeated statements in the deed that one of its purposes was to secure the equal and ratable payment of the principal and interest to the bondholders, without preference, limitation or distinction, and in event of foreclosure "if the proceeds of any such sale shall not be sufficient to pay in full the principal of said bonds, then without preference or priority such proceeds shall be applied ratably to the payment of all of the bonds

secured hereby." And, to see that each bondholder was treated ratably with the others, it was provided that the trustee "may proceed to protect and enforce the rights of the trustee and of the bondholders hereunder by suit or suits for the enforcement of any remedy which the trustee, being advised by counsel, shall deem effectual or desirable to protect and enforce the rights aforesaid," and "All of the remedies provided herein to be enjoyed and exercised by the trustee in case of default hereunder shall be cumulative and in addition to all of the rights and remedies provided by law." What are the rights of an individual mortgagee in event of default? To bring foreclosure proceedings, have sale of the mortgaged property and to be a bidder if he choose. What is his remedy? An action in foreclosure. The above quoted words meant something. They cannot be passed off as surplusage; and, in our opinion, they may well be construed to imply that the trustee has power to do whatever in its judgment is advisable to be done, not for the interest of one bondholder, but for the best interest of all bondholders ratably. Pomeroy's Equity Jurisprudence, 4th ed., § 1062:

"Trustees, in carrying the trust into execution, are not confined to the very letter of the provisions. They have authority to adopt measures and to do acts which though not specified in the instrument, are implied in its general directions, and are reasonable and proper means for making them effectual. This implied discretion in the choice of measures and acts is subject to the control of a court of equity, and must be exercised in a reasonable manner." (And see *Grossenbacher v. Spring,* 108 Kan. 397, 399, 195 Pac. 884, and 21 C. J. 116.)

Under the deed of trust it was the duty of the trustee, not to protect one bondholder at the expense of another, but to so conduct its administration of the trust that, so far as possible to accomplish the result, all of the bondholders would be protected to the best possible advantage and ratably among themselves.

Default was made by the mortgagor, and in performance of its duty the trustee brought foreclosure proceedings, and a sale was had at which no bidders appeared at any price, adequate or otherwise. The question of its further duty then confronted the trustee, which had doubt of the extent of its powers, and it filed its motion with the court for instructions and authority, not only as it had a right to do, but as was its duty. (*Old Colony Trust Co. v. City of Wichita,* 123 Fed. 762, 767; 21 C. J. 129; 39 Cyc. 317; 26 R. C. L. 1372 *et seq.;* Pomeroy's Eq. Jur., 4th ed., § 1064.) The motion informed the court as to the lack of specific authority for it to bid for the benefit of all the bondholders; that in the judgment of the

trustee another sale should be ordered, and that at such sale "in the event there are no other satisfactory bidders therefor," it should be permitted to bid an amount not greater than its judgment and interest, plus costs and unpaid taxes; it also presented the matter of the period of redemption and the effect thereof on the bidding, and that in the.opinion of the trustee it would be "next to impossible to secure an adequate bid"; and that it was uncertain as to whether or not it had authority to bid for the benefit of the bondholders. These were proper matters for consideration by the court, and its order shows it did consider them.

What were the rights of a minority bondholder as opposed to the remaining bondholders? While his rights are not in any sense to be ignored, overlooked or frittered away, can he determine the course of action the remainder must pursue? When he purchased, he did so with notice of the recitals of the deed of trust and knew that he was to share ratably with the other bondholders in payment, either by act of the makers of the bonds or as a result of sale in foreclosure proceedings, or otherwise.

We are not convinced by the reasoning of *Equitable Trust Co. v. United States Oil & Refining Co.* and *Werner, Harris & Buck v. Equitable Trust Co.*, supra, that at least under the deed of trust under consideration, the holder of the $100 bond or of eleven $100 bonds can say that he may gamble as he will with his bonds and be the sole judge of whether the trustee can bid for him or not, and that the court cannot say under all the equities of the case that the trustee shall bid on behalf of all the bondholders.

We are persuaded the holding of the Pennsylvania court in *Nay Aug L. Co. v. Scranton Tr. Co.*, supra, that there is no good reason why a trustee should not be permitted to bid at a foreclosure sale, if it be necessary to protect the interest of bondholders, is more reasonable and equitable and should be followed.

A positive and definite rule cannot be laid down as to when the court should make an order permitting the trustee, under a deed of trust where specific authority is lacking, to bid on behalf of bondholders under terms and conditions the court may fix, as such an order must necessarily depend on the existing facts and circumstances; but, on the showing here and in view of the fact that the property was once offered for sale and there were no bidders, it cannot be said that the court exceeded its jurisdiction or abused its discretion.

The judgment of the lower court is affirmed.