No. 31,979

THE WHEELER-KELLY-HAGNY TRUST COMPANY, Trustee, *Appellee*, v. CARRIE B. HESKETT, *Appellant;* THE INDIVIDUALIZING COMPANY OF KANSAS, *Appellee*.

(40 P. 2d 440)

Opinion filed January 26, 1935.

*John W. Adams* and *O. A. Keach*, both of Wichita, for the appellant.

*W. E. Holmes, Mark H. Adams, Howard L. Baker* and *Charles E. Jones*, all of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The Wheeler-Kelly-Hagny Trust Company became trustee in 1928 for the Individualizing Company of Kansas. That company issued bonds for $45,000 as mortgagor, to the Wheeler-Kelly-Hagny Trust Company, as mortgagee. Carrie B. Heskett purchased three of these bonds, totaling on their face the sum of $2,000, which was the amount paid for the same. Her pur-

chase and all of her dealings in connection with the bonds were with that company. Her bonds matured on October 1, 1932, and the principal thereof with the interest thereon from October 1, 1932, are unpaid.

The Wheeler-Kelly-Hagny Trust Company sought to have appellant's bond satisfied in full and canceled by virtue of the purchase of the mortgaged property from the mortgagor by the trust company, for the full amount of the unpaid principal and interest on said bonds. They claim to have the assent thereof from the holders of all the unpaid bonds, except that of Carrie B. Heskett, who declines to consent to the plan, and who insists that her bonds cannot be satisfied and canceled by any such a transaction.

The court, by its judgment, has approved the plan set out in plaintiff's petition, and has approved the acts of the Individualizing Company and the trustee, and has decreed that appellant's bonds be satisfied and canceled by the purchasers.

The petition alleges that a default has occurred in the bonds and the deed of trust has become subject to a foreclosure. It is alleged that with the exception of Carrie B. Heskett, all of the bondholders have agreed to the contract proposed to be made between the Individualizing Company and a mortgage trustee, including provision for a lease and with an option to repurchase. It was recited that default had been made in the mortgage, the sale made and the bonds delivered to the trustee and a warranty deed executed to the trustee. It was provided that a lease should be made by the trustee to the company for $125 per month with the option to repurchase the property at a stated price, and that to avoid foreclosure and redemption the plan was formed providing for the conveyance of the property mortgaged to the trustee in consideration of the cancellation of outstanding bonds.

As a tenant, the Individualizing Company retained the right of occupancy at an agreed rental of $125 per month during the period of two years, when the Individualizing Company was given an option to repurchase the property for an amount sufficient to compensate the bondholders under the deed of trust originally made. The deed of trust contained no provisions for the trustee to make the agreement so the matter was submitted to the bondholders, to whom, with the exception of Carrie B. Heskett, there was $36,000 in bonds outstanding, and they accepted and assented to the plan proposed.

The action was brought to determine whether the trustee had the right to make the agreements with the debtor, claiming that it was better for the bondholders to make the transfer, and this action was really brought to declare and define the rights to make the contract. The petition recited that default had been made on the trust deed or mortgage. The bonds should be delivered to the trustee and a warranty deed executed to it. The $125 of rental money which was made, gave the company the option to repurchase property and to have the rental paid up to the time of the acceptance of the option. Taxes also were to be paid by the trustee, and when this money was collected and paid the trustee would execute the deed. In the event of a failure of the second party to exercise the option, the title should be in the trustee or the first party. It is alleged that all of the bondholders agreed to this plan except Mrs. Heskett and were willing that the contracts planned should be executed. It is further alleged that there is a real controversy as to the right to make the contract between the parties. The plaintiff submits a contract and asks the court to determine the right of the parties to carry out this plan.

Carrie B. Heskett alleged in her answer that she purchased three of the bonds for the sum of $2,000, that she still holds them, that they purport to fall due October 1, 1932; that the plaintiff has no authority and there is no legal authority to require the surrender of the bonds by the plaintiff to anyone whomsoever without reimbursing her for the full amount of her purchase money and damages she may have suffered. The case was tried by the court, and it was held that there was a real controversy on the subject between the parties; that Mrs. Heskett's bonds, $2,000 in amount, should be delivered and canceled; that the contract made may be enforced, and, when carried out, the bonds of Heskett, who is contending, shall be canceled.

In the trust deed on which the bonds were purchased there was a provision that the obligation of the company to pay the principal of said bonds at maturity with interest thereon, shall continue *unimpaired*.

No sale of the mortgaged premises shall be made which shall in any manner diminish or impair the rights of the bondholders. One provision of the bond in the trust deed is section five, which is as follows:

"The company covenants that no sale, lease, consolidation or merger of the

company, or any of the mortgaged premises, shall be made or allowed to remain in force, which shall in any manner diminish or impair the lien or security of this indenture, or any of the rights or powers of the trustee or of the bondholders hereunder."

Then section six which provides that by a vote of two-thirds of the holders of outstanding bonds certain waivers may be effectuated, certain modifications made in the mortgage indenture, and certain other things may be done; but at the conclusion of said section there is the following provision, to wit:

"Provided, always, that the obligation of the company to pay the principal of said bonds at maturity, with the interest thereon, shall continue unimpaired."

The mortgage itself contains no provision authorizing the trustee to purchase the mortgaged property without a foreclosure suit and thus to satisfy and cancel the bonds secured thereby, including those of defendant Heskett. Again the Individualizing Company covenants with the defendant by the terms of the mortgage that:

"No sale . . . of the mortgaged premises shall be made . . . which shall in any manner diminish or impair . . . the rights . . . of the bondholders hereunder."

Not only the established law provides for the foreclosure of the mortgage and the remedies provided by statute, but the stipulations of the bond itself provide that the obligations shall continue unimpaired. To obviate the foreclosure and enforcement of the present contract, a contract was made that she should accept the plan provided by the new contract which gives her a different interest than she already had. She was contending and insisting that the contract already made was binding and she was entitled to have it enforced. It is a violation of the constitution prohibiting the impairment of the obligation of a contract. Mrs. Heskett had the right to collect interest and principal in an action, and that right was impaired by the proposed acts of some bondholders and the trustee making a new contract, against which she protested as being contrary to the constitution. Something is said of the depression causing an emergency, but if there be any emergency in this it is not a ground for modifying or canceling a contract and all the remedies given for its enforcement. In *Ex Parte Milligan*, 71 U. S. (4 Wall.), 1, 120, 18 L. Ed. 281, 295, the following was said of such a proposition:

"Time has proven the discernment of our ancestors; for even these provisions, expressed in such plain English words that it would seem the ingenuity

of man could not evade them, are now, after the lapse of more than seventy years, sought to be avoided. Those great and good men foresaw that troublous times would arise, when rulers and people would become restive under restraint, and seek by sharp and decisive measures to accomplish ends deemed just and proper; and that the principles of constitutional liberty would be in peril, unless established by irrepealable law. The history of the world had taught them that what was done in the past might be attempted in the future. The constitution of the United States is a law for rulers and people, equally in war and in peace, and covers with the shield of its protection all classes of men, at all times, and under all circumstances. No doctrine, involving more pernicious consequences, was ever invented by the wit of man than that any of its provisions can be suspended during any of the great exigencies of government. Such a doctrine leads directly to anarchy or despotism, but the theory of necessity on which it is based is false; for the government, within the constitution, has all the powers granted to it which are necessary to preserve its existence, as has been happily proved by the result of the great effort to throw off its just authority."

In *First National Bank v. Neil*, 137 Kan. 436, 20 P. 2d 528, it was held that a trustee under a deed of trust might, after a foreclosure, bid as purchaser the amount of the judgment and costs in behalf of the bondholders, and under the circumstances detailed the court did not exceed in jurisdiction or in abuse of its discretion in authorizing the trustee to bid on the property. There are principles of equity entering into the making of a sale and its confirmation which the court may enforce as, for instance, in determining what is an adequate price, whether the confirmation of the sale will be in consonance with equity, and may fix an upset price; but that is all quite different from setting aside and canceling a contract providing the terms and conditions of payment, or the employment of remedies established by law. It affords the opportunity to foreclose with a judicial sale of the mortgaged property, looking to other assets available to satisfy the judgment.

Some of the bonds, $9,000 of them, had been paid in advance, leaving $36,000 of them still due on which the Individualizing Company is making payment from time to time. A recent decision of the United States supreme court passed on a phase of the subject. In *First Nat. Bank v. Flershem*, 290 U. S. 504, 78 L. Ed. 465, the National Radiator Corporation issued $10,705,000 sinking fund gold debentures, bearing six and one-half per cent interest, and named the Bankers Trust Company as trustee. At first the radiator corporation was successful, but business slowed up in 1928, and Rudolph B. Flershem and others were appointed a committee for the reorganization of the National Radiator Corporation. It developed

a plan for the company, about ninety-six per cent of the security-holders assented, about three per cent stood silent, and one per cent objected. The radiator corporation defaulted on interest payments in February, 1931. On October 1, 1931, the reorganization committee brought a suit in the United States district court for the appointment of receivers, making the National Radiator Corporation sole defendant. The Bankers Trust Company intervened as plaintiff and asked for the appointment of receivers in coördination with the reorganization committee. The United States district court appointed receivers who sold all of the assets of the corporation for $2,550,000, a grossly inadequate price. The sale was confirmed by the district court. On appeal to the circuit court the judgment of the district court was affirmed, and this gave to the holders of the debentures comparatively little for their bonds. On certiorari the case came to the supreme court of the United States, which reversed the lower court in so far as it compelled the dissenting holders of debentures to abide by the judgment of the lower court, and held that the debentures were entitled to the payment of their bonds in full after the conventional sale by the receivers. In the opinion by the supreme court it was said:

"The management, whose competency had been challenged, functioned as members of the reorganization committee. Having failed to obtain the assent of all the security holders to its plan, the committee sought the aid of a court of equity to compel the minority's acquiescence; and the corporation joined as defendant in the prayers of the bill. Reorganization was the primary relief sought. The appointment of the receivers and the judicial sale were the device employed to effect a transfer of the assets of the existing corporation to a new one, thereby relieving both from the payment of the former's debts. By these means it was hoped to subject all dissenting creditors to the condition of impotency so frequently occupied by minority stockholders.

"The substantive law affords no warrant for so abridging the rights of individual creditors. . . . If, acting upon purported authorizations from the board of directors and all stockholders, the radiator corporation had sought to achieve the purpose of the reorganization committee by a voluntary transfer of all of the assets to a new corporation, the conveyance would have been fraudulent in law as to dissenting debenture holders. . . .

"The sale and reorganization being in law fraudulent as to the petitioners in No. 64, it remains to consider the relief to which they are entitled. . . . The relief and the procedure should be the same here. . . .

"Nothing in the indenture with the Bankers Trust Company, or in its action as trustee thereunder, interferes with affording them this relief. That instrument expressly reserves to the individual debenture holders the right to collect interest and principal in an action at law. If that right was impaired by the

acts of the trust company, in declaring the principal of the debentures due and securing judgment thereon, equity will grant relief; because those acts, done at the request of the reorganization committee, were incidents of the plan which we hold was fraudulent in law as to these petitioners. The debenture holders who, by assenting to the plan, coöperated with the corporation and the reorganization committee, are in no position to complain that these petitioners will fare better than they." (pp. 517, 518, 520.)

While the foregoing case in its facts is not identical with the one at bar yet the principles of law laid down in it are identical with those involved in the present case. The plan appears to have been put into execution by the actions of the trustee, the Individualizing Company and some bondholders. The contract, although ratified by a decree of the court, is invalid. The defendant, Carrie B. Heskett, is entitled to be paid the full amount of her bonds and interest. It appears that the contract sought to be substituted for the one she held under the trust deed is made without authority of law, and it is therefore held that the judgment shall be reversed and the cause remanded with direction to enter judgment for the defendant, Carrie B. Heskett. It is so ordered.