ROBERT J. WEBB, TRUSTEE, APPELLANT, V. JOHN W. PATTER-
SON ET AL., APPELLEES: E. W. EXLEY, TRUSTEE,
APPELLANT: DAN MORRIS, INTERVENER, APPELLEE:
ANNIE L. EPPS, INTERVENER, APPELLANT.

FILED FEBRUARY 12, 1926. No. 23713.

1. Mortgages: FORECLOSURE: PARTIES. In an ordinary mortgage foreclosure suit, one holding an interest in the proceeds of the sale by reason of rights possessed by him in the mortgage is a necessary party to such suit under article V, ch. 20 (sections 9207-9223) Comp. St. 1922.

2. ——: ——: INTERVENTION. Where, in such suit, an interested person is not made a party, ordinarily he may intervene as a matter of right under section 8552, Comp. St. 1922, at any time before sale.

3. Parties: INTERVENTION. Section 8552, Comp. St. 1922, providing how and who may intervene, should be "liberally construed, with a view to promote its object and assist the parties in obtaining justice." Comp. St. 1922, sec. 9518.

4. ——: ——: OVERRULING MOTION: EFFECT. Overruling a motion to strike a petition of intervention lodged without leave given is equivalent to the granting of leave, and relates back to the date of filing of such petition.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*Gurley, Fitch & West, John N. Dryden, Byron G. Burbank, Mulfinger & Webb* and *Baker & Ready,* for appellants.

*N. P. McDonald, John A. Miller* and *E. L. Randall, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

THOMPSON, J.

This suit was brought August 20, 1920, in the district court for Buffalo county by F. C. Haver, trustee of certain property in Kearney under deed of trust, who was, after decree entered, supplanted by Robert J. Webb as such trustee, against John W. Patterson and Mary Patterson, husband and wife, and E. W. Exley, as trustee in bank-

ruptcy of the North American Hotel Company. Trial was
had to the court September 25, 1920; finding and judgment
of foreclosure and sale in favor of plaintiff and against
defendants Patterson and Exley. After judgment was
entered, and before sale, to wit, June 28, 1921, Dan Morris
filed in the case a petition of intervention, claiming to be a
prior lienholder against such property, as hereinafter set
forth. This intervention was challenged by Webb by mo-
tion to strike such petition from the files, which was over-
ruled. Morris later filed an amended petition in interven-
tion, to which plaintiff Webb, and Exley, filed answers,
denying the allegations in such amended petition, and Exley
carrying therein the objection to the overruling of the
motion to strike. After issues were duly joined, and the
taking of evidence closed, and before the decree complained
of in this appeal was entered, plaintiff, without leave of
court, filed an amended answer to the amended petition of
Morris, carrying therein objections to the intervention of
Morris. Mrs. Epps, a bondholder who had been permitted
to intervene, also filed an amended answer to such amended
petition. Morris then filed a motion to strike such amended
answers from the files, which was sustained.

Judgment for Morris was entered as prayed, from which
plaintiff, defendant Exley, and Mrs. Epps appeal, relying
for reversal upon the following alleged errors, to wit: (1)
The court erred in overruling the motion of plaintiff to
strike the petition in intervention of Dan Morris from the
files. (2) The court erred in sustaining the motion of inter-
vener Morris to strike from the files the amended answer
to the amended petition of intervention. (3) The court
erred in refusing to allow plaintiff to file his amended
answer to the amended petition of intervention of Morris.
(4) The findings and judgment of the court are not
sustained by the evidence and are contrary to law.

The record discloses that prior to February, 1918, the
North American Hotel Company, an Iowa corporation,
owned a number of lots in Kearney, upon which it had
commenced the construction of a hotel. On February 19,

1918, such company executed a trust deed to the property to Frederick C. Haver as trustee, being the one here sought to be foreclosed, to secure bonds to be issued by the corporation in the sum of $150,000, to cover cost of such construction, which deed of trust provided, among other things, that the North American Hotel Company should erect a seven-story building, specifically describing it, within six months from the date of such deed, and, if it should neglect to do so, the trustee might complete the erection thereof. It gave the trustee power to make any and all necessary contracts for such construction, and provided that any sums advanced by him for the completion of the structure, with interest at 7 per cent., should be a first lien upon the premises, and a charge upon such premises prior and paramount to the bonds secured under the trust deed. It further provided that in all actions or transactions in any way affecting the premises or any part thereof, or the title thereto, the trustee should be the representative of the bondholders, and in no case should it be necessary to notify any bondholder for the purpose of binding him.

It was provided on the face of each of the bonds, after identifying such trust deed, that "To all the provisions of which trust deed this bond and each coupon hereto attached are subject, with the same effect as if the said trust deed were herein fully set forth."

The work of construction was begun shortly after the date of the trust deed, and continued intermittently for some years. Later, it was abandoned altogether by the hotel company, parts of the constructed portion being left without roof over it, and all without windows, thus exposing the plumbing which had been installed, as well as the building generally, to the elements, resulting in deterioration. Certain public spirited citizens of Kearney, among them defendant Patterson and intervener Morris, became concerned about this state of affairs, and proceeded to investigate the situation. After some negotiation, and on May 26, 1920, the hotel company, in consideration of $1 in cash and the transfer to it of 201 shares of its capital stock, sold and

conveyed the property to defendant Patterson, subject to the indebtedness evidenced by the trust deed. However, it was expressly stated in the deed that Patterson did not assume or agree to pay any of the indebtedness against the property. At this time there was considerable personal property on the premises conveyed, to wit, materials and equipment for use in the construction of the hotel. Title to such personalty passed to Patterson by virtue of a contract entered into by and between the parties simultaneously with the execution of the before-mentioned conveyance, which provided, in part, that it was to be a complete conveyance of such personalty, which must be used by Patterson in the completion of the building, as far as applicable, and, if not so used, then it was to be returned to the hotel company; if sold by him, the proceeds were to be applied to the construction of such building.

In May, 1920, Morris entered into an oral agreement with Haver, as trustee, with approval of Patterson, the owner, by the terms of which Morris agreed to furnish labor and materials for the completion of the structure, for which he was to receive certificates of indebtedness which would be prior to the rights of the bondholders, and in accord with the provisions of the trust deed above mentioned. It was also understood that an action to foreclose the trust deed should be commenced, in which a receiver would be applied for, with power to complete the hotel and issue receiver's certificates for the expense thereof as expenditures were made, to be paid out of the proceeds of the sale of such trust property prior to the payment of any of the bonds. Immediately thereafter, Morris contracted for materials, and proceeded with the completion of the building. He also completed the payments upon a large amount of materials and millwork which had previously been acquired by the hotel company and transferred to Patterson.

In August, 1920, Haver concluded not to ask for the appointment of a receiver in the foreclosure proceedings, which was unknown to Morris, but to immediately com-

mence suit, obtain a decree as soon as possible, and then sell the property under it.   Haver had previously requested Morris to proceed with the construction slowly and at moderate expense, and complete such portions of the building as would minimize deterioration, until after the foreclosure and sale.   Upon the appointment of Webb in Haver's place, the former expressed dissatisfaction with the agreement with Morris.   Pursuant to his contract with Haver, Morris expended $18,997.19 in furtherance of the completion of the structure, and on June 28, 1921, he filed a mechanic's lien against the property for this amount.

It will be seen that the trustee named in the deed of trust had complete authority, and it became his · duty to complete the structure, and safeguard the same when necessary in the furtherance of the enterprise.   The cost of this completion became superior and prior in security under the trust deed and the bonds to the $150,000 nominated therein. This authority is not only granted in the deed, but also in each bond covered thereby.   Thus the trustee could personally, as such, complete the structure, or could do so by contracting with others; if by contracting with others, they to the amount of their respective contracts became and were subrogated to his rights under the trust deed *pro tanto*.   The necessity for such completion on the part of the trustee had arisen at the time he contracted with the appellee Morris, and existed at all times thereafter.   As Haver's successor desired, as the evidence discloses, not to permit Morris to proceed further, the debt of $18,997.19 owing the latter became due, and his right to foreclose ripened, and he became entitled to a foreclosure thereof as prayed.   This brings us to the question:   Did the court err in refusing to strike Morris' petition of intervention, filed after the decree in favor of plaintiff was entered, and before a sale?   In such case, the court seeks to adjust the rights of interested parties and do those things which equity and good conscience require.   In this case, the cause of action held by Morris antedated in its inception the commencement of this suit.   His interests were at all times

known to plaintiff.    It must have been also well known that to permit his claim to remain unconsidered would serve to reduce the amount that the property would bring when placed on the market, whether at private or public sale. The court could have on its own motion ordered Morris brought in, in order that the rights and interests of all might be subserved and protected.    *Horn v. Volcano Water Co.*, 13 Cal. 62.    Morris was lulled into inaction by the promise that plaintiff would apply for a receiver who would serve all, which was not done.    Then, he had a right to rely on his contract, that out of the sale of the property he would first be paid, and that the decree would so provide.    He did not know that the contrary was intended until Haver had been displaced by Webb, and Haver's attorneys by other attorneys, who, shortly before the petition was filed by Morris, informed him that his arrangements with Haver, if any such he had, were not satisfactory, and indicated that payment of such claim for $18,997.19 would be resisted.

In filing such petition in intervention, the orderly procedure would have been to have asked leave before filing, and, with such request, submit for consideration such petition duly verified, or by way of affidavit present the facts. However, as the right of Morris to intervene in this case is without question, it would have been an abuse of discretion to have refused the request if timely made, which we find it was, both under section 8552, Comp. St. 1922, as well as within the inherent equity powers of the court.    We are warranted in this construction of such statute by section 9518, Comp. St. 1922, which provides: "The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this Code.    Its provisions and all proceedings under it shall be liberally construed, with a view to promote its object and assist the parties in obtaining justice."

We also said in *Jenkins Land & Live Stock Co. v. Kimsey*, 99 Neb. 308: "Our Code provides that the action (foreclosure of mortgage) shall be commenced in the district court; that the petition must allege that no proceedings

at law have been had, or commenced, to recover the mortgage debt; that the court shall find the amount due on the mortgage, and order the mortgaged premises sold for the satisfaction of that amount, with interest and costs. No judgment can be rendered by the court until after a confirmation of the sale, when the court may render a judgment for a deficiency, if any exists. The action is still pending and no final judgment can be rendered until the sale is confirmed, when, if there be a deficiency, a personal judgment may be rendered therefor upon which an execution may be issued."

The decree in this case found the amount due plaintiff, and provided, among other things, that sale was not to be had for 20 days; that proceeds thus realized should be first applied to the satisfaction of the sum found to be due plaintiff; that any balance should remain subject to the further order of the court; that if the proceeds were found insufficient to satisfy the decree, then plaintiff should have the right to apply for a deficiency judgment. Such decree remained open as to all matters inherent in the facts set forth in the petition as to those not parties related thereto in interest, as intervener Morris herein.

Thus, as so many questions were left open and undetermined, both as to law and fact, and being guided by the facts reflected by the record, and the object sought to be covered by section 8552, *supra,* together with the spirit of liberality in which it should be construed, we are impelled to hold that the filing of Morris' petition in intervention was within statutory time, and within his right.

However, if we should have accepted appellant's contention that leave should have been first obtained before filing such petition. the overruling of the motion to strike the petition is equivalent to granting leave to file it. *Ringen Stove Co. v. Bowers,* 109 Ia. 175.

The question is also raised as to the remaining personal property turned over to Patterson by virtue of the contract with the hotel company. This contract authorized him to dispose of such thereof as was not needed, or not suitable for

the completion of the building, and to use the proceeds in the further construction; his judgment being controlling. After the filing of the mechanic's lien by Morris, an agreement was entered into between him and Patterson, providing, among other things, that the same should be and was sold to Morris in consideration that he give credit for the agreed value thereof, to wit, $7,500, on the $18,997.19 claim held by him against the trust, which was done. This transaction was ratified by the trial court, and decree in his favor reduced by that amount. The decree safeguarded the rights of all, and was clearly within the scope and intent of the contract.

The other assignments of alleged error have been carefully considered, and are found to be without merit. The considerations of the trial court are in all things

AFFIRMED.