KITCHEN BROS. HOTEL COMPANY, APPELLEE, V. OMAHA SAFE DEPOSIT COMPANY, TRUSTEE, APPELLEE: CONTINENTAL LIFE INSURANCE COMPANY, INTERVENER, APPELLANT.

FILED APRIL 14, 1934. No. 28865.

*Charles G. Revelle* and *Courtney S. Goodman,* for appellant.

*Fradenburg, Stalmaster & Beber, Charles Battelle* and *Kenneth S. Finlayson, contra.*

Heard before GOOD, EBERLY and DAY, JJ., and CARTER and CHAPPELL, District Judges.

CHAPPELL, District Judge.

A suit was commenced by the Kitchen Bros. Hotel Company against the Omaha Safe Deposit Company of Omaha, theretofore appointed by the district court for Douglas county, Nebraska, as successor trustee to the Fidelity Bank & Trust Company, insolvent and in the hands of a

receiver, the object and prayer of which was to obtain a decree, *inter alia,* that certain payments which had been made upon a mortgage be declared legal payments and enjoining the successor trustee from declaring a default and foreclosing a mortgage. While this case was pending a default in subsequent payments upon the mortgage was made by the mortgagor, Kitchen Bros. Hotel Company. The defendant Omaha Safe Deposit Company of Omaha, as successor trustee under the mortgage, then filed its answer and cross-petition to foreclose the mortgage. On January 30, 1933, a final decree of foreclosure was entered by the court. On February 3, 1933, after the decree had been entered, the appellant, Continental Life Insurance Company, claiming to own some of the bonds secured by the mortgage, obtained an *ex parte* order permitting it to intervene and file instanter a motion to modify the decree. The motion was overruled upon hearing February 18, 1933, and this appeal perfected by the Continental Life Insurance Company.

The motion of appellant to modify the decree alleged that it was the owner of $118,000 of the first mortgage bonds of Kitchen Bros. Hotel Company, and that the decree of foreclosure, under date of January 30, 1933, was unlawful, invalid, and in direct violation of section 4, article V of the mortgage indenture, in that it provides: "(6) That the Omaha Safe Deposit Company as successor trustee herein may bid for and purchase said mortgaged property for a sum sufficient to pay the full amount of the said indebtedness hereinbefore found due it as trustee aforesaid, with interest thereon and costs of suit as aforesaid, or for any less amount, all for equal *pro rata* benefit of the holders and owners of the first mortgage series 'A' gold bonds and interest coupons and the series 'B' gold note subject to the respective priorities existing between the said first mortgage series 'A' gold bonds and the said series 'B' gold note. (7) That in the event that said cross-petitioner as successor trustee herein shall, under the power hereby conferred, bid for and

purchase the said mortgaged property, it shall be entitled
to receipt to the sheriff of Douglas county, Nebraska, for
the full payment of its bid as trustee of the holders and
owners of the first mortgage series 'A' gold bonds and
interest coupons and series 'B' gold note secured by said
mortgage indenture and chattel mortgage for each and all
of them, without liability for payment of cash on account
of such bid and without liability to account for or to dis-
tribute cash to any bondholders on account of such bid.
(8) That in the event that the said Omaha Safe Deposit
Company, as successor trustee, cross-petitioner herein,
shall, under the power hereby conferred, bid for and pur-
chase the said mortgaged property, that it may do so
without the production of any of the first mortgage series
'A' gold bonds or interest coupons thereto attached and/
or series 'B' gold note described in said mortgage in-
denture and chattel mortgage and the receipt of the
trustee as hereinbefore set forth shall be accepted by the
sheriff of Douglas county, Nebraska, as the equivalent
of cash in the amount thereof."

Section 4, article V of the mortgage indenture in con-
troversy, provides: "In event of sale of the mortgaged
property under a decree of foreclosure, any bondholder,
or bondholders or committee of bondholders or the trustee,
may bid for and purchase such property and shall be
entitled for the purposes of making settlement or payment
of the bid to use and apply any bond and any matured
and unpaid coupons or moneys due them under this mort-
gage by presenting such bonds and coupons in order that
they may be credited thereon the sum apportionable and
applicable thereto out of the net proceeds of such sale
and thereupon such purchaser shall be credited on account
of the purchase price payable by him with such sums
apportionable and applicable out of the net proceeds to
the payment of or as a credit on the bonds and coupons
so presented. The trustee, as such trustee, for the ben-
efit of the holders of the bonds and coupons then outstand-
ing and unpaid without any further authority or direction

from such holders, may bid at such sale and become the purchaser of the property and take and hold the title thereto for the benefit of the holders of the outstanding bonds and coupons, and the trustee shall then have full power and authority to manage, operate and control such property and to resell the same at such price and on such terms as it deems for the best interest of the bondholders. * * * The proceeds of such a sale shall be held by the trustee and distributed as provided in article VI of this indenture."

We meet the contention, made for the first time in this court, that parties cannot come into a case by intervention after judgment. Section 20-328, Comp. St. 1929, provides: "Any person who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or against both, in any action pending or to be brought in any of the courts of the state of Nebraska, may become a party to an action between any other persons or corporations, either by joining the plaintiff in claiming what is sought by the petition, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the action, and before the trial commences." We have passed directly upon this matter in several cases. "In the first place the contention of the appellee that a statutory petition in intervention must be filed before trial must be conceded. But there are two kinds of intervention—that provided by section 7609, Rev. St. 1913 (now section 20-328, Comp. St. 1929) which, we have decided in common with the courts of other states having like provisions, is a matter of right, and which requires no leave to be granted by the court. In such a case the intervener can only file as a matter of right before the trial. * * * The other kind of intervention is that which prevailed in this state before the enactment of the statute mentioned, and which, while not an ancient procedure in courts of equity (note at page 281, 123 Am.

St. Rep.), has been adopted by many courts as essentially equitable in its nature, and which may be allowed by a court of equity in its discretion in a proper case." *State v. Farmers State Bank,* 103 Neb. 194.

"It is first argued that a petition to intervene must be filed before trial, that the right of intervention terminates with the final decree, and that the trial court erred in overruling the motion to strike intervener's pleadings from the record. In this connection reference is made to the statutory right of intervention before trial. Comp. St. 1922, sec. 8552 (now Comp. St. 1929, sec. 20-328). Intervention under this statute is a matter of right, but does not prevent a court of equity in the interests of justice from allowing a proper party to intervene after the trial has begun. *State v. Farmers State Bank,* 103 Neb. 194. Was intervention properly allowed 17 days after entry of the unexecuted decree of foreclosure? Leave to intervene after the entry of a final decree is not allowable as a matter of right and should seldom be granted, but equity sometimes requires a departure from the general rule. In the light of both reason and precedent it has been said: 'Applications for leave to intervene after entry of a final decree are unusual, and generally have been denied. There are instances, however, where petitions for leave to intervene have been filed and granted after decree.' 21 C. J. 345." *Engdahl v. Laverty,* 110 Neb. 672. See, also, 21 C. J. 341-343, 345, and notes; *Brown v. Brown,* 71 Neb. 200; *Ward v. Clark,* 6 Wis. *509; *Webb v. Patterson,* 114 Neb. 346.

If the allegations of the motion to modify the decree were true, the decree obtained by intervener's trustee was unlawful, invalid and in violation of the contract made by the *cestui que trust* with its trustee who supposedly represented it in this litigation. The decree in this case was not yet executed. The application to intervene was made within four days after the decree was signed and filed and during the same term of court. No question as to the right to intervene is involved except as to the

time thereof. The equity court certainly had the power at this time to modify its directions inserted in the judgment commanding the parties to do particular things for the purpose of carrying the judgment into effect which do not relate to the merits of the controversy. Paragraph 13 of the decree retains jurisdiction for just such purposes. Except when the right to intervene is considered absolute, the grant of the right is within the sound discretion of the court and will be liberally exercised in favor of intervention. Under the circumstances we believe the court properly permitted appellant to intervene and file the motion to modify the decree. *Straus v. Chicago Title & Trust Co.*, 273 Ill. App. 63; *Farmers Loan. & Trust Co. v. Northern P. R. Co.*, 66 Fed. 169; *Continental & Commercial Trust & Savings Bank v. Allis-Chalmers Co.*, 200 Fed. 600; *Howard v. Shinn*, 190 Fed. 940; *Wightman v. Evanston Yaryan Co.*, 217 Ill. 371; *Columbia Knickerbocker Trust Co. v. Ithaca Street R. Co.*, 141 N. Y. Supp. 249; *Sage v. Central R. Co.*, 99 U. S. 334; *Webb v. Patterson, supra.*

Appellee contends that section 6, article V of the mortgage indenture, prohibits the holder of any bond or coupon from instituting any suit, action or proceeding in equity or law for the foreclosure of the mortgage or the execution of any trust thereunder, or for any other remedy, unless written notice is given the trustee or unless the holders of one-fourth of the bonds and coupons shall have made request of the trustee and give it reasonable opportunity to exercise its power thereunder; that by virtue of this provision appellant cannot maintain intervention. We must hold that this provision is not a limitation upon the inherent rights of bondholders to protect their interests under the circumstances. *Hoyt v. Du Pont de Nemours Powder Co.*, 88 N. J. Eq. 196; *Columbia Knickerbocker Trust Co. v. Ithaca Street R. Co., supra.*

We come now to the main question in the case; that is, whether paragraphs 6, 7, and 8 of the decree are in direct violation of section 4, article V of the mortgage in-

denture, in direct contravention with the terms and provisions of the mortgage indenture as a whole and not warranted or authorized by any of the terms of the mortgage indenture, and whether such provisions of the decree are valid. A careful reading of the mortgage indenture as a whole, the decree of the court and many eminent authorities convinces us that such provisions are in conformity to and with the provisions of the mortgage indenture, for the benefit of and protection for all the bondholders, and legal and binding in every respect upon all the parties thereto.

This agreement, the mortgage indenture, was made in the first instance to secure the common interests of all the bondholders in such a manner that none should obtain an advantage over the others. It was agreed by the mortgage indenture that, upon foreclosure, purchase might be made by the trustee on account of all the bondholders and that subsequent disposition of the property should be for the common benefit of all of them. It will be noted that the decree in paragraphs 11, 12, and 13 provides the manner of distribution upon sale, for deficiency, and retains jurisdiction by the equity court to give such further orders as may be necessary or proper for the benefit and protection of all the parties in interest.

It will be noted that *Equitable Trust Co. v. United States Oil & Refining Co.*, 35 Fed. (2d) 508, and *Werner, Harris & Buck v. Equitable Trust Co.*, 35 Fed. (2d) 513, relied upon by appellant, are not in point here, for the reason that in both cases there was no provision in the trust deed authorizing the trustee to bid for and on behalf of the bondholders. Further, in both of these cases the orders made by the court were *ex parte.* We call attention to *Hoffman v. First Bond & Mortgage Co., Inc.*, 116 Conn. 320, *Nay Aug Lumber Co. v. Scranton Trust Co.*, 240 Pa. St. 500, and *First Nat. Bank v. Neil*, 137 Kan. 436, which all hold that the trustee has a right to purchase for the benefit of bondholders at a foreclosure sale

upon order of the equity court although the trust deed did not contain any express provision authorizing it.

Appellant contends that the rights and interests of the successor trustee, as given by the foreclosure decree, are antagonistic and hostile to and in conflict with the rights and interests of minority bondholders. A careful reading of the decree discloses that the successor trustee is permitted to bid as successor trustee for the benefit of all the holders and owners of series "A" bonds and series "B" gold note, and not in his individual capacity for his own benefit or profit. The right of the trustee to bid as an individual for its own benefit and profit is not in controversy. The question is confined solely to its power to bid as successor trustee for the benefit of all the bondholders, and not on its own individual account for its own benefit or profit. Bearing this in mind, *Missouri Valley Trust Co. v. Nelson,* 104 Neb. 499, *Stettnische v. Lamb,* 18 Neb. 619, and 2 Perry, Trusts and Trustees (7th ed.) 1293, sec. 749, relied upon by appellant, are not in point.

We arrive at a construction of section 4, article V of the mortgage indenture, by reading the whole of the instrument. It seems to us without question that there are three ways in which sale of the property could be made: (1) For cash, which follows as a matter of course; (2) to a bondholder or a committee of bondholders with *pro rata* payment made in bonds or money; (3) purchase by the successor trustee as such for all the bondholders without the production of either bonds or money. Section 4, article V, does not require that the successor trustee pay the amount of the bid in cash or deliver bonds which would be immediately returnable to it. *Silver v. Wickfield Farms,* 209 Ia. 856; *Beal v. Blair,* 33 Ia. 318; *Quaintance v. Mahaska County State Bank,* 201 Ia. 457; *MacLaglan & Pierce v. Witte,* 1 Neb. (Unof.) 438; *Lockwood v. Cook,* 58 Neb. 302. The logics of equity cannot be so marshaled under these circumstances as to require this impossible and meaningless procedure. Appellant cites no precedent and we find none for it.

Having concluded that the mortgage indenture makes provision for the procedure provided for in the decree, we turn to the question of its legality. We find that great adventures in the field of business and finance have brought to the courts of last resort a new field of inquiry upon this subject. While there is a diversity of opinion, the great weight of authority undoubtedly establishes the legality of such procedure. *Straus v. Chicago Title & Trust Co., supra,* is the latest case we have been able to find. It disposes of every question raised in this case and is supported by eminent authority. In this well-reasoned case, the court said: "It is a universal rule of law that a trustee is in duty bound to see that the property entrusted to his care is not lost to the beneficiaries. Courts will take judicial notice that property sold under foreclosure seldom, if ever, brings a figure at all commensurate with its value, and that under the present financial condition of the country there is great depreciation in the values of real estate, and that a foreclosure sale of property will bring far less now than in normal times. *Atchison, T. & S. F. R. Co. v. United States,* 284 U. S. 248; *Morris Plan Bank of Richmond v. Henderson,* 57 Fed. (2d) 327. In these circumstances we think the property in question ought not to be sold at a price which will result in great loss to the bondholders, if this can be avoided by having the property bid in for the amount of the indebtedness, by the trustee, for their use and benefit. Of course, it may be said that any sale made by the master must first be approved by the court before it is binding and in this way the bondholders are protected. * * * Under these provisions we think the trustee may foreclose the trust deed, purchase the property at the sale for the benefit of the bondholder, and apply the amount due on the bonds, as found by the decree, in payment of his bid without the production of the bonds, all of which, of course, will be subject to the approval of the chancellor, who will protect the rights of each and every bondholder. *Hoffman v. First Bond & Mortgage*

*Co., Inc.,* 116 Conn. 320; *Nay Aug Lumber Co. v. Scranton Trust Co.,* 240 Pa. St. 500; *First Nat. Bank v. Neil,* 137 Kan. 436; *Silver v. Wickfield Farms,* 209 Ia. 856; *Sturges and Douglass v. Knapp,* 31 Vt. 1; *Werner, Harris & Buck v. Equitable Trust Co.,* 35 Fed. (2d) 513."

" 'Trustees, in carrying the trust into execution, are not confined to the very letter of the provisions. They have authority to adopt measures and to do acts which, though not specified in the instrument, are implied in its general directions, and are reasonable and proper means for making them effectual. This implied discretion in the choice of measures and acts is subject to the control of a court of equity, and must be exercised in a reasonable manner.' 3 Pomeroy's Equity Jurisprudence (4th ed.) p. 2428. * * * It is one of the most important and essential powers of a court of equity to raise the implications growing out of the state of trust property, the purposes to be accomplished and the mode adapted to that end, without violence to or forced construction of the trust instrument. *Sturges and Douglass v. Knapp,* 31 Vt. 1, 52." *Hoffman v. First Bond & Mortgage Co., Inc.,* 116 Conn. 320. The court also said: "The trustee was the constituted representative and protector of noteholders who are numerous, widely scattered, and unorganized, and therefore impotent to effectively protect their own interests from sacrifice at a forced sale, precipitated by a third party, in a demoralized market. When default of payment of the mortgage debt occurred and until foreclosure was consummated, the trust was active and the trustee's duties correspondingly so. 'It not only is not a dead, dry trust, but is one of the most active and momentous responsibility.' *Sturges and Douglass v. Knapp, supra,* p. 55. * * * It would be absurd to regard the trustee's duty as terminated at the very time when its protection was most needed. If it had stood by and permitted the property to be sold for a fraction of its value, the trustee might have been exposed to the charge of 'supine negligence or wilful default' which was sustained in *Watson v. Scranton*

*Trust Co.,* 240 Pa. St. 507. * * * In an emergency a court of equity may, for the preservation of the trust and the protection of the beneficiaries from loss, even authorize a trustee to depart from the terms of the trust agreement. * * * Considerations similar to those which justify the right to bid in at the foreclosure sale dictate that the trustee hold and administer the property acquired thereby until such time as it can be disposed of without unnecessary sacrifice and loss to the noteholders. This right and duty would seem to be a necessary corollary and consequence of the right to bid and buy." See, also, *New Jersey Nat. Bank & Trust Co. v. Lincoln Mortgage & Title Guaranty Co.,* 105 N. J. Eq. 557; *Marsh v. Reed,* 184 Ill. 263; *In re New,* L. R. (1901) 2 Ch. Div. 534; 2 Perry, Trusts and Trustees (7th ed.) sec. 764; 2 Beach, Trusts and Trustees, secs. 428, 429, 430; 3 Thompson, Corporations (2d ed.) sec. 2678; 3 Cook, Corporations (6th ed.) sec. 885; *Etna Coal & Iron Co. v. Marting Iron & Steel Co.,* 127 Fed. 32; *Sage v. Central R. Co.,* 99 U. S. 334. In *New Jersey Nat. Bank & Trust Co. v. Lincoln Mortgage & Title Guaranty Co., supra,* it was held that the "great and widespread depression in real estate in New Jersey and elsewhere, resulting in an excessively abnormal number of purchases * * * at foreclosure sales, and inability to dispose of such properties without great losses" constituted such an emergency; that "the real estate values are actually existent; it is the market which is temporarily lacking, and which will eventually return."

While the court has in mind that there is danger of further loss in some instances by following this procedure, it cannot overlook the fact that in these times a large portion of the bondholders, being unable to bid by reason of lack of financial resources, would be at the mercy of those bondholders and others who are fortunate enough to have financial ability to bid who would thus be able to purchase the property at such sale for a fraction of its ordinary value, thereby enriching themselves, and depriving the small helpless investors of their just and legal

rights. America has always survived these financial crises and recovered her economical equilibrium within a reasonable time. We believe it will do so again, and that bondholders, by virtue of this precedent, will be able eventually to recover such loss as would be otherwise inevitable. This court takes cognizance that the whole proceeding henceforth shall continue to be under the watchful supervision and control of a just and fearless court of chancery and that any sale of such property by the successor trustee, if purchased by it for the bondholders, cannot be made without its consent and approval; that in the meantime the property will be managed, operated and controlled by the successor trustee under its supervision.

The judgment of the district court is right, and it is

AFFIRMED.