No. 13,589.

COSMOPOLITAN HOTEL, INC. ET AL. *v.* COLORADO NATIONAL BANK.

(40 P. [2d] 245)

Decided December 17, 1934. Rehearing denied January 7, 1935.

Mr. EDWARD L. WOOD, Mr. CHARLES GINSBERG, Mr. CHARLES ROSENBAUM, for plaintiffs in error.

Messrs. BARTELS, BLOOD & BANCROFT, for defendant in error.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

THIS controversy grows out of the sale of a large hotel and theatre property pursuant to foreclosure of a first deed of trust thereon, given to secure an issue of notes or bonds, variously and numerously owned, some of them

64

by plaintiffs in error. Over their protest the trial court authorized defendant in error, trustee in the deed of trust, to bid at the sale, and in payment of its bid, if accepted, to employ the judgment given in the foreclosure suit based on all outstanding bonds, which, of course, included those of plaintiffs in error, and to take title in its name as trustee. Plaintiffs in error contend that under the provisions of the deed of trust the foreclosure sale was required to be for cash, hence, as argued, the court was without authority, they not consenting, to strip them of their contract rights and involve them in joint ownership of property against their will.

 Two provisions of the deed of trust operate, we think, to justify the nonconsenting bondholders in their assignments of error based upon this contention. The first goes to the equality of rights enjoyed by the bondholders, the clear intendment of which is that each holder shall be free from the domination of any other or of all the others. The deed of trust was ''for the common and equal use, benefit and security of all and singular the person or persons, corporate or natural or their assigns, who shall at present and from time to time hereafter be the holder of any of the bonds and coupons hereinbefore mentioned, without any preference, distinction or priority as to lien or otherwise, of one bond from any other, so that each bond shall have under this deed of trust the same right and lien.'' What were those rights? Two may be mentioned. First, to have payment, principal and interest, ratably with all holders. Second, default obtaining, to enjoy the benefits of foreclosure in accordance with the terms of the deed of trust. ''In case of default * * *,'' the instrument recited, ''it shall and may be lawful for said trustee, * * * to sell and dispose of said premises and property herein described, * * * and all the right, title and interest of said grantor or his heirs or assigns therein, at public auction * * *, for the highest and best price the same will bring in cash.'' It does not provide that the trustee may make

the bid of which complaint is made, or any bid. The trustee's authority, specifically stated, was to sell, not to purchase, and to sell for cash. No doubt there was justification for the foreclosure, and apparently it was proper for the court in such a proceeding to enter judg-- ment in the full amount of all unpaid bonds. When it came to ordering sale, however, the terms were neces- sarily to be fixed in accordance with the deed of trust, not in disregard thereof. The court could not be moved by a majority of the holders, or nearly all of them, or all save one, to a plan other than that stated in the deed of trust. By the deed of trust each holder was protected, and so long as he invoked the terms of that instrument the manner of his enjoyment could not be denied at the behest of like holders or at the instance of a court of equity. "The rights of bondholders were measured by their bonds and the trust deed securing the same, and, absent any provision therein authorizing the trustee to bid for and on behalf of the bondholders, there was no power in the courts to confer such authority upon the trustee. We think there can be no doubt as to the cor- rectness of this conclusion. Each bondholder has the absolute right to determine for himself, in case of de- fault, whether he shall take his loss and quit, or continue to gamble; if the property is sold at public sale, he has a right to take his proportion of the best bid that can be secured in cash, and cannot be compelled to become an owner of an undivided interest in the property." Judge McDermott, writing the opinion in *Werner, Harris & Buck v. Equitable Trust Co.*, (CCA 10) 35 F. (2d) 513. "A bondholder has a right to insist upon his contract, even if eventually he should fare worse by insisting upon his share of a sale for cash, together with the right to look to the responsibility of the mortgagor for a propor-- tionate share in the deficiency. He is not bound to be- come an owner in common of a beneficial interest in a trust which may run on for many years and from which he may realize cash, stocks, bonds, or other securities that.

eventually may net him more or less than the amount he would have received had the property been sold for cash." *Detroit Trust Co. v. Stormfeltz-Loveley Co.,* 257 Mich. 655, 242 N. W. 227. The Michigan court took occasion to approve the holding in *Werner, Harris & Buck v. Equitable Trust Co., supra,* stating that the court there had announced the "correct and reasonable rule," and added: "The bondholders are entitled to receive what their contract provided for, and cannot be compelled to take in lieu thereof a beneficial interest in a trust uncertain as to time and outcome, and not contemplated by the indenture." In *Beckman v. Emery-Thompson Co.,* 9 O. App. 275, Beckman, as trustee, bid as here and the sale was confirmed. Subsequently the trustee conveyed the property. After such conveyance some minority bondholders, not having joined the preponderating holders in the proceedings, sought to have the confirmation order set aside. The circumstances considered, the court denied the application, but said: "The complaining bondholders * * * can, as they have done, disavow Mr. Beckman's right to buy on their behalf, and they can insist upon his duty to account to them for their full pro rata of the proceeds of the bid price, as though it had been received by him."

In support of the judgment below, *Nay Aug Lumber Co. v. Scranton Trust Co.,* 240 Pa. St. 500, 87 Atl. 843, is cited. The opinion there, if sound on its own facts, and it is especially disapproved in *Werner, Harris & Buck v. Equitable Trust Co., supra,* and *Detroit Trust Co. v. Stormfeltz-Loveley Co., supra,* should not be regarded as persuasive in a case of different or additional facts. It does not appear that the trust deed there provided that the sale should be for cash, nor that the rights of individual bondholders had been so carefully safeguarded as in the trust deed here. In short, we are dealing with a very definite contract, which does not appear to have been the case in the Pennsylvania inquiry. That the decision there, admittedly without precedent, or, as said in Ann. Cas. 1915A, 237, "one of first impression," was

unwise in any event, appears in *Watson v. Scranton Trust Co.*, 240 Pa. St. 507, 87 Atl. 845, a proceeding by a bondholder in the same matter.

In addition to the Nay Aug case our attention has been called to *Hoffman v. First Bond & Mortgage Co.*, 116 Conn. 320, 164 Atl. 656; *Frst Nat. Bank v. Neil*, 137 Kan. 436, 20 P. (2d) 528; *Central T. & S. Co. v. Chester County Co.*, 9 Del. Ch. 123, 77 Atl. 771; *Sturges v. Knapp*, 31 Vt. 1; *Straus v. Chicago Title & Trust Co.*, 273 Ill. App. 63; *Silver v. Wickfield Farms*, 209 Ia. 856, 227 N. W. 97; *Kitchen Bros. Hotel Co. v. Omaha Safe Deposit Co.*, 126 Neb. 744, 254 N. W. 507. A study of those cases reveals their distinguishing facts.

In the Connecticut case the court said: ''The mortgage specifically vested the right to enforce it exclusively in the trustee in case of default. Thereupon it 'may proceed to call said notes, or to enforce the rights and lien of said noteholders under this mortgage, either by foreclosure, or any other proper proceeding, in any proper court, by way of remedy, as said trustee shall deem most effectual to protect said noteholders.' '' There is no equivalent provision in the record we are reviewing.

In the Kansas case, as with all the cases thought to sustain the judgment of the trial court, nothing appears to indicate that the sale was required to be for cash. Even in the absence of that requirement the court remarked that a definite rule to fit all cases cannot be laid down.

Of the Delaware case the compilers of Ann. Cas. 1915A, 237, properly say that ''It was attempted to set aside the sale on other grounds, no question being raised as to the right of the trustee to purchase for the bondholders.''

In the Vermont case the trustees purchased a railroad property pursuant to bond foreclosure, and thereafter leased it to another railroad company. Certain bondholders (a majority in this instance) sought to have the lease set aside, urging that as the result of the purchase the trustees held a ''dry, naked trust,'' and that their

only authority was to convey it to the cestuis que trust. The court held that the trustees were acting in accordance with the terms of the deed of trust. No question as to the power of the trustees to bid on foreclosure was presented.

In the Illinois Appeals case the trust deed provided: "That in case of default the trustee may, without any action on the part of any bondholder, declare all bonds immediately due and payable, and may proceed to protect the trust by any means which he may deem most effectual; that in case of a foreclosure sale of the property, any bondholder or the trustee may bid and purchase the property and apply the amount due on the bonds in payment of his bid; that the powers, duties and rights of the trustee may be exercised by him 'without the possession or production of any of such bonds or coupons or proof of ownership thereof'; that in all suits or transactions relating to the trust deed or the mortgaged property the trustee is deemed to be the representative of the bondholders, and that in no case shall it be necessary for him to notify any bondholder or make any bondholder a party to any suit or proceeding." "Under these provisions," the court said, "we think the trustee may foreclose the trust deed, purchase the property at the sale for the benefit of the bondholders, and apply the amount due on the bonds, as found by the decree, in payment of his bid."

In the Iowa case a mortgagee was foreclosing a mortgage on a defaulted debt. It held as collateral for the same debt bonds of an issue secured on other lands of the mortgagor. This mortgage had been foreclosed, and the trustee bid the full sum of all the bonded debt, including those held by the creditor first referred to. What was sought in the litigation was to require the creditor to abandon his own foreclosure and to be adjudged to have been paid by virtue of the trustee's bid on the bond foreclosure. The court refused to so decree, saying that the mortgagee "had the right to elect what remedy it would pursue."

The deed of trust in the Nebraska inquiry provided, that, upon foreclosure, "The trustee, as such trustee, for the benefit of the holders of the bonds and coupons then outstanding and unpaid without any further authority or direction from such holders, may bid at such sale and become the purchaser of the property and take and hold the title thereto for the benefit of the holders * * *, and the trustee shall then have full power and authority to manage, operate and control such property and to resell the same at such price and on such terms as it deems for the best interest of the bondholders."

In *Detroit Trust Co. v. Stormfeltz-Loveley Co., supra,* where the right of individual bondholders to enjoy foreclosure in accordance with the provisions of the deed of trust was upheld, the court's determination was in the face of a statute which provided for the procedure adopted out of hand by the trial court here, the holding being that the act contravened the due process clause of the Fourteenth Amendment of the Constitution of the United States and the corresponding provision of the Michigan Constitution. The Michigan case fairly met the issue, as the quotations from the opinion, appearing earlier in this opinion, make manifest. Of the cases cited, facts considered, only the case from Michigan and *Werner v. Equitable Trust Co., supra,* are in point. The courts in those inquiries examined the deeds of trust, and, finding that the manner of foreclosure had been set forth in clear language, as here, adjudged that it did not lie with a judicial tribunal to say that because some bondholders wished to depart from the terms of the instrument of their security, other noteholders, protesting, should be required to adopt the departure. Most simple and essentially sound.

It is sought to discount the contractual rights of the protesting noteholders because their holdings are small. That is neither sound in law nor moving in equity. As to one of the plaintiffs in error, it is urged that he purchased bonds while the foreclosure was pending, and

at much below their face value. Power to impinge his legal rights can find no predicate there. The rights of all minority holders, concededly lawful, are quite as sacred as the rights of others. There is no occasion, as we think, for the court to determine between them. Let all be relegated to the instrument which is the source of their security, there, as representing like, not opposing, rights, to enjoy according to law that which was plainly contracted in their several behalf.

Without question the trial court thought what was done partook of wisdom, but, as said by Mr. Justice Brewer, sitting at circuit, the court was dealing "with legal rights, as the parties have, by contract, made them, and although it may believe that a party insisting upon those rights is probably, or even certainly, bound to suffer loss, yet while he insists it must protect him in his insistence. There is no wide discretion vested in the chancellor which permits him to disturb contract rights." *Merchants' Loan & Trust Co. v. Chicago Rys. Co.*, 158 Fed. 923, 927. This is not a contest between debtor and creditor, as in *Home Building & Loan Association v. Blaisdell*, 290 U. S. 398, 54 Sup. Ct. 231, 78 L. Ed. 413, cited by counsel for defendant in error, but is between creditors of like rank, contracted to enjoy to "common and equal use, benefit and security" the deed of trust and its provisions. The creditors, whether composed of a majority wishing to proceed in a manner conceived by them to be desirable, or a minority insisting on proceeding as the deed of trust provides, are equal before the law, and equal under the provisions of the deed of trust. They are not adversaries in the sense that out of regard for the desires of either, a court of equity may require the other to waive contract rights. *National Surety Co. v. Coriell*, 289 U. S. 426, 436, 53 Sup. Ct. 678, 77 L. Ed. 1300. Nor did the problem justify the trustee in taking a partisan attitude. Its required course was clearly outlined in the deed of trust, and when conditions warranted action on its part it had but to follow the blazed trail.

It was no part of its duty to incline a welcoming ear to any interest, and it should have had no concern beyond the instrument of its authority. Its obligation considered, it represented all or a majority of the bondholders no more than it represented each bondholder. The warrant of its representation was a writing free from ambiguity. Only there should the trustee have looked, and the court, also looking to that instrument, should have appreciated its lack of power to require any protesting bondholder to waive specific rights.

A further thought is, that what was done does not amount to foreclosure. It was stopped short of consummation. Before the proceeding was begun, and pursuant to power set forth in the deed of trust, the trustee was in possession and management of the property. Not the slightest change has resulted. The trustee still possesses and manages the property. Sale, so far as the beneficiaries are concerned, is yet to be made. Until then the beneficiaries must wait. In the meantime, they, not the trustee already in the enjoyment of an allowance of $15,000 by the court with definite reservation in the decree for more, nor the trustee's counsel compensated by an allowance of $25,000 with like reservation, assume all the hazards of inexperienced management where experienced management failed. "The temptation of the exercise of power and patronage," said Chief Justice Taft, "in the * * * management of great businesses under the court should not be a feather's weight in prompting court action." *Harkin v. Brundage,* 276 U. S. 36, 55, 48 Sup. Ct. 268, 72 L. Ed. 457. The philosophy of that great jurist finds lodgment in our reflections. See, also, *International Trust Co. v. United Coal Co.,* 27 Colo. 246, 266, 60 Pac. 621, where Mr. Justice Campbell emphasized the futility of a court of equity's attempt to carry on a business in which the owner had been unsuccessful. Before the trustee's gratuitous act of overlordship, and the interposition of the court's order, the beneficiaries, and each of them, enjoyed the legal right to whatever protection

the definite provisions of the deed of trust afforded. One such provision was that on foreclosure the sale was to be for cash. If the judgment below were to stand, those who made the investment, acquiescing or protesting, will necessarily have to await the pleasure of the trustee, perhaps moved and controlled to that end by a ponderous court of equity, as to when, in what manner and for how much the property shall be sold. In a phrase, it would result in nothing short of a glorified receivership. The course pursued does not have our approval.

Let the order be that the judgment is reversed, further proceedings to conform to this opinion.

MR. JUSTICE CAMPBELL and MR. JUSTICE BOUCK dissent.

MR. JUSTICE BOUCK, dissenting.

The judgment of this court reverses the lower court's confirmation of the sale held under a decree for foreclosure of a mortgage. I dissent.

"In case of default and failure of grantor to remedy the same as provided in Article VIII, *it shall and may be lawful for said Trustee,* it being hereby expressly covenanted and agreed that should the Trustee desire or require that the public trustee shall act herein with the same rights and powers of the Trustee, *to sell and dispose of said premises* and property herein described (en masse or in separate parcels, as said public trustee may think best) and all the right, title and interest of said grantor or his heirs or assigns therein, *at public auction* at the East front door of the Court House, in the City of Denver, State of Colorado, or on said premises, or any part thereof, as may be specified in the notice of such sale, *for the highest and best prices the same will bring in cash,* four weeks' public notice having been previously given of the time and place of such sale, by advertisement, weekly in some newspaper of general circulation at that time published in said City of Denver." (Italics are mine.)

The above passage from the deed of trust involved in this foreclosure suit is obviously made the corner stone of the majority opinion.

In this, I think, the majority opinion errs. That passage is not involved here. The trustee did not resort to the power of sale therein contained. Instead, the trustee pursued the time-honored method of foreclosure in equity. The Colorado public trustee act, Compiled Laws, 1921, §§5044 et seq., would seem to forbid any other method where, as here, the public trustee is not named as trustee.

Foreclosure by ministerial sale under a power being thus out of the case, the foreclosure is wholly in equity. The established principles of equity jurisdiction—and not the inapplicable and invalid mortgage provision above quoted—must therefore prevail.

The majority opinion ignores the fact that the sale was accordingly in equity, a judicial sale, and not under the supposed power. It consequently falls into the error of taking the "strict authority" principle discussed in 2 Perry, Trusts and Trustees (7th Ed.), page 1037, §602 q, which governs ministerial sales under express powers (where there is no judicial supervision, or any other supervision for that matter) and applying it to a judicial sale (where the court of equity directs and controls in the interest of all). The mortgage does not attempt to restrict a judicial foreclosure by any provision as to procedure or as to manner of sale. The sale was not by the trustee, but was by the court through its regular officer, the sheriff. Of course neither this court nor the lower court can lawfully make a new contract for the parties or inject into their contract new provisions by implication or indirection.

Now, since the matter rests entirely within the jurisdiction of equity, and is not controlled by any express agreement giving rise to a contractual right as to the manner of sale, it stands to reason that the whole fabric of the arguments advanced by the plaintiffs in error must fall if equitable principles have been properly

74

applied. Whether this has occurred must be judged by the record. The majority opinion says, to be sure, that the lower court authorized the trustee "to bid at the sale, and in payment of its bid, if accepted, to employ the judgment given in the foreclosure suit based on all outstanding bonds, which, of course, included those of plaintiffs in error, *and to take title in its name as trustee.*" What the court authorized can best be shown by quoting the decree itself:

"That the ex-officio sheriff make the sale for not less than the minimum or upset price of $1,000,000 for all of said property, as an entirety, to be paid in cash, except as bonds and coupons, pro rata, and a credit on the judgment of the plaintiff, Trustee, * * * shall be considered as cash * * *; that any and all of the defendants to this cause, and the holders of bonds and coupons * * * may bid at the sale, and the said ex-officio sheriff shall sell to the person or persons so bidding the highest amount, provided such bid be for cash, and for not less than the said upset price, both as above stated; *and in the event no bid equal to or in excess of the said upset price be made by others, then the plaintiff, Trustee, may bid,* and the said ex-officio sheriff shall sell to the plaintiff, Trustee, *for an amount not less than the said upset price,* and not more than the amount of its said judgment, *the said Trustee's bid, if made, to be satisfied and paid by a credit on the said judgment.*"

The record itself discloses certain facts which I believe are necessary to an understanding of this particular case, and I shall therefore recite them with the utmost brevity consistent with their importance.

The foreclosed mortgage is a deed of trust executed in December of 1924 on the property comprising the Cosmopolitan Hotel and the Broadway Theater in the heart of Denver. It constituted security for a bond issue.

Plaintiff in error Cosmopolitan Hotel, Inc., has acquired the original mortgagor's title to the mortgaged premises and consequently is the owner of an equity of

redemption. The other plaintiffs in error are holders of bonds aggregating in par value $34,000, of which more than a third was purchased after the decree for sale was entered and at a price amounting to only a little over 20 per cent of the par value. The unpaid bonds total $1,480,-000, and the minority bondholders own less than one forty-third of the whole. The holders of 97.7 per cent in value of the bonds have raised no objection whatever, and the owners of between 70 per cent and 75 per cent of the total bond value have affirmatively authorized the acts complained of by the plaintiffs in error.

The defendant in error, the Colorado National Bank of Denver, was named in the mortgage as trustee for the bondholders, and upon default in the payment of bonds and interest it took possession of the property. pursuant to the express terms of the instrument, and with the express consent of said plaintiff in error Cosmopolitan Hotel, Inc. By that double authority the trustee is still in possession and operating the property.

Proceedings of foreclosure, duly instituted by the trustee, resulted in a judgment for $1,683,214.67 in favor of the trustee, and in connection with the judgment a decree was entered providing for a foreclosure sale. To that judgment and decree no objection was made before the entry thereof; but thereafter the plaintiff in error Schwartz, who acquired his bonds after the decree had been entered, made an objection in the form of an application to vacate the decree and order of sale. No further objections were made until after the sale itself, which was held on July 21, 1934, after the usual notice had been given. The plaintiffs in error, including Schwartz, then filed separate objections to confirmation of the sale. At the hearing on those objections there was no evidence tending to vitiate the proceedings except on the theory broached by the plaintiffs in error that the purchase of the property by the trustee in accordance with the decree was ipso facto illegal. There was no suggestion of fraud. No prospect of a cash purchase was indicated ex-

cept that after the sale Schwartz testified that he was willing to bid $500,000, or "might bid" $750,000. Actually, though he had advance knowledge of the impending sale, he had bid nothing.

There is in the deed of trust no express provision by which the trustee is authorized to bid in the property, nor is there any provision forbidding it to do so. A provision authorizing the trustee to bid in the property appears, however, in the decree itself and will be hereinafter quoted. At the foreclosure sale no cash bidders appeared when the property was offered, and thereupon the trustee, in accordance with the terms of the aforesaid decree, and admittedly purporting to act on behalf of all the bondholders, bid in the entire property at $1,250,-075.04, or nearly three-fourths of the judgment and approximately 25 per cent more than the "upset" price, hereafter referred to. Of this purchase price the trustee paid in cash $75.04, the amount of fees and expenses. The balance, $1,250,000, was paid by the trustee's crediting this sum on the judgment, in compliance with the terms of the foreclosure decree.

It is not claimed that the trial court lacked the power it exercised in fixing an "upset" or minimum price of $1,000,000. This was in effect a determination that, under the particular facts and circumstances shown, it would be inequitable to permit the property to be sold below the appointed minimum. No one assailed this limitation as unreasonable, or applied to the lower court for a modification in that regard. Indeed, counsel expressly conceded that the court had the right to fix the upset price. It was clearly beneficial to the mortgagor and to the minority bondholders.

The argument of plaintiffs in error seems to be that, if there is no cash bid at the first sale, the only alternative is to proceed to another sale, and another, and so on, until a cash bid is received. This course would in the present case contravene the fundamental ideas of equity and justice, as well as sound business principles. Courts

may take judicial notice that, under present economic conditions, such a process may well be destined to destroy every vestige of material value. The trial judge had the preliminary advantage of taking evidence and analyzing the whole matter, including the practical probabilities (which turned out to be actualities) in connection with the question of getting cash bidders at the sale and of the certainty that there would not be any. He, after hearing the witnesses before him, was in position to decide what would best protect and conserve the interests of all concerned. The evidence taken is before us, it is not even suggested that it is unreliable, and it seems amply sufficient to support the findings.

With the nonappearance of cash bidders the legitimate function of chancery came properly into play, in order that the property might be conserved—according to the stated purpose of the mortgage—''for the common and equal use, benefit and security of all'' who hold the bonds.

It must be remembered that the trustee is not bound to see that the bondholders are paid in full according to their contract as stated in the bonds. Its duty is simply to apply the security equally and impartially toward payment of all alike. Contracts must yield when equity gets into action. The whole body of equitable remedies used in connection with receivers and trustees is the best proof thereof.

Trustees for bondholders are governed by the same equitable principles as trustees of other trusts. 2 Perry, Trusts and Trustees (7th Ed.), pages 1292, 1302, §§749, 760.

The fundamental question then recurs whether the lower court properly dispensed equity in this case. There is no doubt in my mind that in view of the facts the lower court wisely worked out its problem and proceeded in conformity with recognized rules of equity.

Strongly supporting this conclusion are the following cases: *Hoffman v. First Bond & Mortgage Co. Inc.,* (February, 1933), 116 Conn. 320, 164 Atl. 656; *First Nat. Bank*

*v. Neil* (April, 1933), 137 Kans. 436, 20 P. (2d) 528; *Nay Aug Lumber Co. v. Scranton Trust Co.* (1913) 240 Pa. St. 500, 87 Atl. 843; *Central T. & S. Co. v. Chester County Co.* (1910), 9 Del. Ch. 123, 77 Atl. 771; *Sturges v. Knapp,* (1858), 31 Vt. 1.

The doctrine of those cases has apparently been approved in Illinois, Iowa, Maryland, Nebraska, New York and other jurisdictions. An able and interesting discussion, wherein that doctrine is approved—though a decision thereon was not necessary inasmuch as the mortgage there contained express authority for a bid by the trustee —is found in *Straus v. Chicago Title & Trust Co.* (December, 1933), 273 Ill. App. 63. See also *Silver v. Wickfield Farms* (1929) 209 Ia. 856, 227 N. W. 97; *Kitchen Bros. Hotel Co. v. Omaha Safe Deposit Co.* (April, 1934), 126 Neb. 744, 254 N. W. 507.

These cases seem amply sufficient to justify the statement in 42 C. J., page 206, §1833. ''The trustee in a deed of trust in the nature of a mortgage may purchase at the foreclosure sale when this is done in the discharge of his duties as trustee; and where authority to purchase is not explicitly conferred in the instrument, it may very well be implied.''

In the case at bar this right was expressly conferred upon the trustee by the foreclosure decree under particularly careful safeguards which were duly observed. In no other way could the interests of all the bondholders have reasonably been protected.

Even the case of *Beckman v. Emery-Thompson Co.,* 9 Ohio App. 275, cited in the majority opinion, is in accord with the general doctrine and affirmed the sale there involved, the only point creating difficulty being one that arose after confirmation as to the right of the minority bondholder to receive cash for his security.

Many questions may arise after confirmation. Some would arise in the present case if judgment were affirmed, as I think it should be.

By affirming judgment herein this court would not vest

title in the trustee and so (in the words of the majority opinion) "involve them in joint ownership of property against their will." The very fact that the suit is now in equity would protect the security of the bondholders. Whether there should be an attempt at effecting a satisfactory exchange of securities by incorporation or reorganization with equal rights to both majority and minority bondholders, or otherwise; whether, in the event of the dissenting bondholders' refusal to enter into such an arrangement, they should be paid the value of their bonds in cash, or how that value shall be determined; whether there should be a sale by the trustee or whether it should be public or private; all these questions are in my opinion questions for the trial court to determine after confirmation of sale.

I believe that this court should therefore affirm the judgment and let those and other questions be dealt with hereafter by the trial court in regular order.

*Detroit Trust Co. v. Stormfeltz-Loveley Co.*, 257 Mich. 655, 242 N. W. 227, is cited by the plaintiffs in error. However it involved a proceeding under a special statute which required a certain notice that was omitted, and the court said [at page 662]: "While no notice is necessary with respect to proceedings incident to the usual foreclosure sale, notice was necessary under the special type of proceeding provided by the act," and apparently for that reason set the sale aside. At page 663 the court touched upon a principle that has frequently resulted in substantial equitable remedies for harsh legal claims, namely the deviation from an express trust where an exigency has arisen not contemplated by the parties, or where by reason of an exigency a security may be much impaired or entirely lost through unusual conditions. This, I think, is the situation here.

But the main reliance of the plaintiffs in error seems to be placed upon *Werner, Harris & Buck v. Equitable Trust Co.*, 35 F. (2d) 513. The facts there utterly differ from those in the case at bar. The bid of the trustee was

in actual and immediate competition with a substantial cash bid by a bidder (who actively opposed confirmation of the sale to the trustee). Furthermore there was no upset or minimum price fixed, and a protective bid on behalf of the bondholders was not provided for in the foreclosure decree as in the one before us. Moreover, the court there undertook to give the trustee the right to make a competitive bid as against any and all cash bidders, and did so by an ex parte order made after entry of the foreclosure decree. The case is in no sense an authority for the situation that confronts us here.

The recent case of *Colorado Investment and Realty Co. v. Newkirk,* 95 Colo. 71, 32 P. (2d) 830, is cited by counsel for the defendant in error as good authority for affirming the judgment herein. In view of the duties expressly imposed upon the trustee by the mortgage I think the contention is correct and the doctrine of the case mentioned is applicable in this.

The above are my reasons for dissent.

MR. JUSTICE CAMPBELL concurs in this opinion.