## Herman et al. v. Latrobe Bank & Trust Co.

*William M. Kahanowitz, Raymond Cassidy* and *Mahady & Mahady,* for plaintiffs.

*Smith, Best & Horn* and *John S. Lightcap, Jr.,* for defendant.

McCANN, P. J. (forty-seventh judicial district, specially presiding, sitting as chancellor), May 1, 1946.— In our opinion, after a careful consideration of the voluminous testimony in this case, we are of the opin-

ion that only one practical question arises here, and that is whether or not the Latrobe Bank and Trust Company, the present legal owner of the Eagles Building, holds it subject to a trust in favor of the bondholders.

A great many witnesses were called in this case in an effort to establish personal liability on the part of the officers and directors of the Latrobe Trust Company and the Latrobe Bank and Trust Company, its successor. The testimony covers such a long period of time, in fact since 1924, that all of the responsible officers who were in charge of the transactions have died, and any action against any of the others would have long since been barred by the statute of limitations. The important facts are these.

On November 1, 1924, the Latrobe Aerie No. 1188, Fraternal Order of Eagles, owning a lot of ground and a five-story building erected thereon at a cost of upwards of $140,000, executed a mortgage upon said building for $70,000, as security for a bond issue of $70,000, consisting of 700 six percent bonds of $100 each. The mortgage was given to the Latrobe Trust Company, a banking institution in Latrobe, as trustee, and the Latrobe Trust Company as trustee accepted the trust. It was a dry trust involving very simple duties.

On September 14, 1927, the Latrobe Trust Company caused a scire facias sur mortgage to be issued to no. 264, November term, 1927, and, in the assignment of breaches which the trust company set forth and had in their files, they instituted these foreclosure proceedings upon the request in writing of one third or more of the value of the coupons or interest warrants overdue. In other words, the trust company instituted proceedings for the execution and sale of the property at the request of the bondholders who had alleged defalcation and, in our opinion, the proceedings in this respect were regular and sustained by the evidence.

At the sheriff's sale, which was on November 18, 1927, levari facias no. 76, November term, 1927, the property was sold by the sheriff. Latrobe Trust Company, the trustee, did not bid, but permitted the property to be sold to one G. E. Anderson for the sum of $1. The said G. E. Anderson admittedly purchased the property for the Latrobe Trust Company and immediately executed a declaration of trust in which he declared that he held the property in trust for the Latrobe Trust Company, and about six years later conveyed the said property in fee simple to the Latrobe Trust Company. The Latrobe Trust Company held this property, apparently as absolute owner in fee simple, until June 19, 1937, when it conveyed the property along with a large number of other properties to the Latrobe Bank and Trust Company, its successor. The property was conveyed at a time when the Latrobe Trust Company was in financial difficulties and had reorganized to avoid failure of the bank. The consideration named for the transfer of this particular piece of real estate was $20,000. There is evidence that from time to time some of the plaintiffs who were bondholders made inquiry from the proper officials of the Latrobe Trust Company as to the payment of the bonds or the interest thereon, and there is some evidence that they were told, on one occasion at least, that the bonds would be taken care of at maturity. The Latrobe Bank and Trust Company still holds legal title to the real estate.

It is admitted that the original proceedings for sale were regular. It was only after the sheriff's sale was consummated that actual wrongdoing occurred. When the Latrobe Trust Company, itself then owning about $30,000 of the bonds, through its officers, caused the property to be sold at sheriff's sale to G. E. Anderson for the nominal bid of $1 and permitted him to take title in fee simple and accepted a declaration of trust from him that he held the property solely for their use

when it should have stated that it was held jointly for their use and for the use of the other outstanding bondholders, the officers and directors of the Latrobe Trust Company perpetrated a fraud upon the bondholders owning the remainder of the bonds; and later, when it accepted a deed in fee simple solely for its own benefit, by so doing the Latrobe Trust Company became trustee ex maleficio for those who were defrauded. This trust impressed itself upon the subsequent holder, the Latrobe Bank and Trust Company, which was the successor to the Latrobe Trust Company, succeeding to all its property, and was conducted by the same officers and directors.

The fact that a consideration was paid by the successor bank is immaterial. In the case of Mead v. Lord Orrery, 3 Atkinson 235, 26 English Reports 937, at page 938, the court held:

"Now to be sure, notice in a court of equity is extremely material; for if a person will purchase with notice of another's right, his giving a consideration will not avail him, for he throws away his money voluntarily, and of his own free will."

"A trustee of an issue of corporate bonds secured by a mortgage is bound to exercise the utmost good faith in dealing with the bondholders and the property of the trust, and its first obligation is to safeguard their interests." Syllabus Land Title Bank and Trust Co. v. Baron, 341 Pa. 241.

"The trustee of a corporate mortgage is bound, in the exercise of the discretion left to it, to use the same diligence and care in protecting the interests of the bondholders that a prudent man would use in protecting his own interest, and such trustee, in the absence of a specific provision in the mortgage, has implied power to bid in the property at a foreclosure sale for the benefit of the bondholders at a figure sufficient to cover the debt, interest and costs, and not in excess of the value

of the property." Syllabus of Nay Aug Lumber Co. v. Scranton Trust Co., 240 Pa. 500.

While the testimony discloses a most unusual lack of knowledge on the part of the directors of these trust companies, the fact remains that the situation was changed and that by the action of the Latrobe Trust Company certain of the bondholders were defrauded, and this is the point of the case.

The Latrobe Trust Company defrauded the bondholders and out of this there arose a trust in favor of the defrauded bondholders, and the successor defendant, Latrobe Bank and Trust Company, actually knew what had happened, or in the exercise of ordinary care would have found that its title was defective. We are certain that this defendant is as fully impressed with the trust as the original wrongdoer.

There is no reason why the Latrobe Bank and Trust Company should be permitted to profit at the expense of these innocent bondholders. This was not an ordinary transaction in any sense of the word. This building was a monument in the City of Latrobe. The testimony discloses that it was a magnificient building, beautifully finished, five stories high, including an auditorium and lodge rooms and, in fact, a modern lodge building that was a monument to the town. It was not a mere trifle that the directors of either of these banking institutions could have overlooked.

The question arises here as to whether or not the bondholders have been guilty of laches. We do not believe that they have. The sheriff's sale was held in 1927 and action was not taken until 1943, or a period of almost 16 years, but there are excuses for the delay. Plaintiffs and other bondholders did not know of the execution and they did not know that the building was being held by Anderson or by the Latrobe Trust Company as individual property. They made inquiry with reference to the payment of the bonds at the Latrobe Trust Company after the sale and were told that the bonds would be paid at maturity. When the bonds were

not paid at maturity they made several other inquiries. In 1942 they first discovered that the Latrobe Bank and Trust Company claimed title to the property and then they took action. There was apparently no change in ownership of the Eagles Building. The lodge continued to occupy the building and exercise control over it, and the bondholders had reason to believe that the building, which was still in the same condition and operated as heretofore, was security for their bonds. If the bondholders had known everything in 1927 they might have proceeded at that time when it first became apparent that the Latrobe Trust Company had attempted to deprive them of their rights. But even the directors of the corporations denied that they had any knowledge, some of them denied that they had knowledge that the property yet belonged to the Latrobe Bank and Trust Company. Marcus Saxman, Jr., testified he did not know that the Latrobe Trust Company owned the Eagles Building and he did not know that it was included in the assets sold to the Latrobe Bank and Trust Company as the property of the Latrobe Trust Company. The question of laches does not depend upon the fact that a certain definite time has elapsed since the cause of action accrued, but upon whether under the circumstances of the particular case the plaintiffs were chargeable with want of due diligence in failing to institute or prosecute their proceedings. In the present case plaintiffs only discovered the fact that the property was being treated by the Latrobe Bank and Trust Company as its own in 1942, and the bill in equity was brought within a reasonable time thereafter, namely, in 1943.

"Laches will not be imputed to a party by reason of lapse of time, where the delay has not resulted in injury to the other party, and each case must be determined upon its circumstances": Syllabus of Overbrook Heights B. & L. Assn., Trustees, v. Savine, 31 Del. Co. 363.

"Where, in any particular case, peculiar circumstances exist which will account for and will excuse or justify the delay, the Court will not then refuse its aid because of mere lapse of time": Shank v. Shank, 51 Daup. 45.

"Mere lapse of time which does not result in changing the position of the other party does not necessarily constitute laches": Pennsylvania Company for Insurances on Lives, etc., v. Wagner et al., 53 Daup. 186.

"Laches, however, is not necessarily to be imputed to a party by reason of the lapse of time where the delay has not resulted in injury to the other party; the circumstances of each case must determine whether there has been a want of due diligence in the institution of proceedings": Benner et al. v. Tacony A. A. et al., 328 Pa. 577, 582.

There is no injury to any one here by the laches of the defendants; if anything, benefits accrued to those who were the wrongdoers. Delays which injure no one are not blamable. It is only reasonable to assume that the parties, who knew that a reputable trustee was named in the mortgage, were fully warranted in believing that such trustee would honestly and fairly carry out the provisions of the trust.

From the testimony in this case there is no blame to be attached to, or no cause of action against the First National Bank of Latrobe.

In our opinion, we must conclude that the Latrobe Bank and Trust Company holds the Eagles property in trust for the bondholders as their interest may appear.

### Decree nisi

And now, May 1, 1946, it is ordered, adjudged and decreed that the Latrobe Bank and Trust Company holds the property formerly known as the Eagles property in trust for the bondholders as their interest may appear, the description of the property subject to the trust being as follows:

"All that certain lot of ground situate in the Borough of Latrobe, Westmoreland County, Pennsylvania, bounded and described as follows: Being Lot No. 4 in Block Hh of the General Plan of Latrobe Borough, having a frontage of 50 feet on the Southerly side of Spring Street and extending back in a Southerly direction between Lots Nos. 5 and 6 in said Block on the East and Lot No. 3 in said Block on the West, a distance of 100 feet to an alley. Having thereon erected a five-story brick building known as the Eagles Building."

And that the costs of this proceeding shall be paid by the Latrobe Bank and Trust Company.

Unless exceptions are filed hereto within 10 days of notice hereof, this decree nisi shall become the final decree in the above-entitled case.